**Lindsay Darrell SWEATT, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

April 1, 1977.

As Modified on Denial of Rehearing June 10, 1977.

STEPHENSON, Justice.

Lindsay Darrell Sweatt was convicted on a count of armed robbery, KRS 433.140, and sentenced to life imprisonment; on a count of malicious striking and wounding, KRS 435.170, and sentenced to twenty-one years' imprisonment; and on a count of robbery in the first degree, KRS 515.020(1)(b), and sentenced to twenty years' imprisonment. The sentences run concurrently.[1] Sweatt appeals. We affirm.

Fred Syers, owner and operator of a jewelry store, was beaten with a pistol and robbed on the morning of December 23, 1974. His testimony was that a man entered his store, and as he was going back to his desk in his walker, the man asked for a Longinnes watch then came toward him and began beating Syers on the head with a pistol. After the beating, Syers saw the man go behind the counter. The man demanded a sack. When Syers told him where to find a sack, the man began taking watches and other merchandise from the showcase. Syers saw the man take off his hat and wipe the glass showcase. After the man left, Syers called the police and was taken to the hospital where he remained for three weeks. The police followed a trail of jewelry to a nearby home occupied by an Ernest Gore. There in a bedroom they discovered the stolen merchandise and a pistol. Gore denied any participation in the robbery, told the police that Sweatt was a frequent visitor, that his front door did not lock securely. He identified the pistol as belonging to Sweatt. Gore was arrested. The police displayed a photograph of Gore to Syers who informed the police Gore was not the man who robbed and beat him. Gore established the fact that he was at work at the time the robbery was committed and was released.

On January 6, 1975, Sweatt was arrested and taken to the hospital where Syers identified him as the one who robbed and beat him. The police explanation for this one-

Thomas E. Clay, Louisville, for appellant.

Robert F. Stephens, Atty. Gen., Sam E. Isaacs, II, Deedra Benthall-Nietzel, Asst. Attys. Gen., Frankfort, for appellee.

1. The armed robbery and malicious striking and wounding offenses occurred in December 1974 before the effective date of the Kentucky Penal Code. The robbery in the first degree offense occurred in January 1975 and is included in the Kentucky Penal Code.

man showup was that Syers could not leave the hospital and they did not know whether he was going to recover. Syers later made an identification from a photographic lineup and positively identified Sweatt at the trial. Sweatt moved to suppress the in-court identification for the reason that it was tainted by the one-man identification at the hospital. The trial court conducted a hearing and determined the in-court identification to be proper based on Syers independent recollection.

Syers identified the merchandise found in Gore's bedroom as the items taken in the robbery and stated that the pistol found with the merchandise "looked like the pistol" used by Sweatt to beat him. Syers described the pistol as being a 6-inch barrel, blue steel revolver, which was a description consistent with the revolver found in Gore's bedroom and identified by him as belonging to Sweatt.

On January 30, 1975, Bessie Kimble, an employee of the S & S Liquor Store, testified that a man came into the store, picked up some potato chips, asked for a soft drink, and when another customer left and she proceeded to the cash register and told him the cost of the purchases, the man pulled a pistol and told her to open the cash register. Kimble protested and stepped back. The man opened the cash register himself, took money from the cash register, and left the store. Kimble called the police and described the man and, being shown a series of photographs, pointed out a photograph of a Leonard Alexander with the remark, "It looks an awful lot like him." The police discovered that Alexander was in the penitentiary, and according to one of the officers testifying at the in-chambers hearing on a motion to suppress the identification of Sweatt, there had been previous mistaken identity incidents involving Alexander and Sweatt. With this background, the officers placed a photograph of Sweatt in a photographic lineup and submitted the lineup to Kimble. She immediately identified Sweatt as the robber, positively identified

him at a subsequent lineup, and identified him at trial.

Sweatt had filed a motion for a bill of particulars, requesting in addition to other information "any exculpatory evidence in possession of the Commonwealth. The answer to this request was, "No exculpatory evidence is in possession of Commonwealth." Apparently the police officers had not informed the Commonwealth of Kimble's tentative identification of Alexander.

At the conclusion of the hearing on a motion to suppress Kimble's identification of Sweatt, on the ground the Commonwealth had not given answers to the bill of particulars, and a motion for continuance on the ground of surprise, the trial court overruled both motions.

Sweatt asserts as error (1) the refusal of the trial court to suppress the in-court identification of Sweatt by Syers for the reason that the one-man showup was unduly suggestive; (2) the refusal of the trial court to suppress the in-court identification of Sweatt by Kimble or to grant a continuance on the charge of robbery in the first degree; (3) failure of the Commonwealth to lay the proper foundation for admitting the pistol into evidence; and (4) prejudicial rulings of the trial court in six instances.

From our review of the evidentiary hearing on Sweatt's motion to suppress Syers' in-court identification, we are of the opinion that the trial court did not commit error in admitting Syers' identification into evidence. In our view, it is significant that Gore's photograph was first displayed to Syers at the hospital and the police informed he was not the robber; and, although taking Sweatt to the hospital for a one-man showup is not the approved method to secure an identification, a police officer testified it was not known if Syers would recover. This situation is analogous to *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). There a hospital showup was imperative for there appeared to be a question as to whether the

victim would recover. In any event, *Stovall* states: "However, a claimed violation of due process of law in the condition of a confrontation depends on the totality of the circumstances surrounding it * * *."

■ Here, in addition to the hospital identification, Syers testified at the suppression hearing that he later identified Sweatt from a photographic lineup and from an independent recollection at the scene, and he testified as to his opportunity to observe Sweatt and gave his description of Sweatt at that time. Cf. *Myers v. Commonwealth*, Ky., 499 S.W.2d 277 (1972). In our view, the totality of the circumstances justified the trial court in overruling the motion to suppress.

■ We are unable to understand Sweatt's assertion that the trial court committed prejudicial error in not suppressing Kimble's in-court identification or alternatively to grant a continuance. This argument is based on Sweatt's assertion that the Commonwealth denied possession of any exculpatory evidence, and it follows that Sweatt considers Kimble's tentative identification of Alexander as exculpatory evidence. It is not. This evidence does not tend to establish that Sweatt is free from guilt. At most, it is a factor which relates to the credibility of Kimble and the weight to be given his testimony by the jury. In any event, in view of the opportunity to cross-examine the witness on the tentative identification, we fail to see any prejudice. Further, it is apparent that Sweatt and Alexander do, in fact, bear a resemblance to each other. And in our opinion, this tentative identification of Alexander leading up to the later positive identification of Sweatt was not withheld evidence, either as to guilt or punishment, in view of Kimble's later identifications and description of Sweatt. Cf. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

■ The argument that Sweatt was surprised by this revelation at the suppression hearing and was entitled to a continuance in order to determine if Alexander was, in fact, in the penitentiary at the time is frivolous. We are not advised what difference it would make in this situation if he was not so incarcerated at the time. The trial court properly declined to grant a continuance.

■ We are of the opinion Sweatt's argument that the Commonwealth failed to establish the integrity of the pistol before its introduction as an exhibit is without merit. Syers testified that it was the type and shape, but understandably could not testify that it was the same gun, nor was he required to so do. His testimony was that he was struck over the head with a gun. For this purpose, we cannot see any necessity for the Commonwealth to prove the chain of custody. *Beason v. Commonwealth*, Ky., 548 S.W.2d 835 (rendered March 11, 1977), is dispositive of this argument.

Lastly Sweatt asserts a litany of what he claims are trial errors prejudicial to him. In our view, these assertions are not errors, and further, none of the cases cited as authority are in point.

The judgment is affirmed.

All concur.