**Donald SIZEMORE, Appellant,**

v.

**COMMONWEALTH of Kentucky,
Appellee.**

**No. 90–SC–599–MR.**

Supreme Court of Kentucky.

Nov. 19, 1992.

Rehearing Denied Feb. 18, 1993.

Anna H. Isaacs, Appellate Public Advocate, Sadieville, for appellant.

Chris Gorman, Atty. Gen., Todd D. Ferguson, Asst. Atty. Gen., Criminal Appellate Div., Frankfort, for appellee.

WINTERSHEIMER, Justice.

This appeal is from a judgment based on a jury verdict which convicted Sizemore of wanton murder and sentenced him to 50 years in prison for the murder of his brother.

The questions presented are whether the defendant was denied a fair trial by the refusal of the trial judge to instruct the jury on the defense of justification; whether it was reversible error for the trial judge to exclude certain alleged competent evidence and to admit alleged incompetent evidence and whether the prosecutor misstated the law of homicide to the jury during closing argument.

The evidence indicates that Donald Sizemore and his brother Gene were planting potatoes in his brother's garden with several relatives and friends. Everyone had been drinking. The evidence shows that the victim complained about the defendant's failure to cover the potatoes sufficiently and subsequently the victim attacked his brother, knocked him down, sat on him and hit him several times. Donald said he would kill his brother. Donald got up and said that he needed to go to his house for some cigarettes although there was some evidence that he had a pack in his pocket. The victim told the others to go inside his house. The victim went to his home and obtained his 30/30 rifle. He strapped on a holster containing a .22 pistol and returned to the outside with the rifle being left near the door.

The defendant testified that he shot a .22 pistol out of Gene's hand and that Gene tried to pick up his gun with the same hand but could not and then he tried to pick it up with the other hand. Donald testified that he turned his head and shot several times at his brother. One of the bullets struck Gene and he died as a result of the wound. Seven shell casings were found around the front door of Donald's home. Upon conviction, this appeal followed.

■ The trial court gave separate instructions on intentional murder, wanton murder, manslaughter in the first degree, and manslaughter in the second degree. It gave a self-defense instruction in connection with intentional murder and its lesser included offenses. The trial judge correctly refused to give a separate instruction regarding self-defense to wanton murder. The defendant was convicted of wanton murder to which the self-defense instruction does not apply as clearly stated in *Shannon v. Commonwealth*, Ky., 767 S.W.2d 548 (1989).

■ Donald argues that the trial court committed reversible error when it refused to allow the testimony of Bev Sizemore concerning statements made by Will Sizemore on the grounds of hearsay. Will Sizemore was not present at the time of the shooting and the only knowledge he had was that a pistol was lying on the ground near the victim's body. The substance of the statement came to the attention of the jury from other sources and any possible

error from its exclusion was nonprejudicial. It was not reversible error for the trial judge to refuse to allow the testimony of Bev Sizemore.

■ Donald also claims that the trial judge erred in allowing the testimony of Deputy Davenport concerning the defendant's statement that Gene had whipped him and that he was tired of it and so he settled it himself. Under the circumstances of this case, the testimony of the deputy was not prejudicial or reversible error.

Prior to the opening statements on the day of trial, the prosecution furnished an unsigned statement to the trial judge and the defendant in which Donald admitted shooting Gene. The substance of the statement was contained in the report of the Sheriff which had been previously furnished to the defendant. Defense counsel said that there was no objection to the testimony by the deputy, but she did object to the introduction of the unsigned statement which was not introduced into evidence.

At trial, the deputy testified that Donald admitted shooting the victim. The deputy, using his notes to refresh his recollection, testified that the defendant had said that the victim "had whipped him twice that day and he got tired of him whipping him and he settled it himself." The trial judge overruled Donald's objection to the details of the deputy's testimony which were not in the written statement. The deputy then testified concerning the defendant's statement, including that Gene had beaten him and that he had shot Gene five or six times. There was no objection. Donald's counsel did cross-examine the deputy concerning his memory of the events and the accuracy of his written report.

The substance of the complained of testimony by the deputy was not significantly different from the report of the Sheriff nor from the other testimony of the deputy. The Sheriff's report contained Donald's statement that he had shot the victim. It was uncontested that Donald had been beaten by the victim. Donald's counsel cross-examined the deputy as to why the statement was not in the deputy's notes. No error nor prejudice was present as a result of Deputy Davenport's testimony.

■ Finally, Donald contends that it was reversible error for the trial judge to deny the defendant's motion for a mistrial following an alleged misstatement of the law of homicide in respect to wanton murder by the prosecutor during the closing argument. This allegation of error has not been properly preserved for appellate review. RCr 9.22. In order to preserve error for appeal with regard to a claimed improper argument, it is necessary to make a contemporaneous objection to the alleged improper remark. *McDonald v. Commonwealth*, Ky., 554 S.W.2d 84 (1977). Here the defendant moved for a mistrial based on the comment of the prosecutor only after the jury had begun its deliberations. The alleged error does not rise to the level of a manifest injustice required by RCr 10.26.

■ In any event, the testimony of the defendant was that he shot a pistol out of the hand of the victim and that while the victim was trying to pick the pistol up with his other hand, he turned his head and fired several times in the direction of the victim. It was not improper for the prosecution to argue for a conviction of wanton murder under the circumstances.

The judgment of conviction is affirmed.

STEPHENS, C.J., and REYNOLDS, SPAIN and WINTERSHEIMER, JJ., concur.

LAMBERT, J., concurs in result only.

COMBS and LEIBSON, JJ., dissent by filing separate dissenting opinions.

COMBS, Justice, dissenting.

Respectfully, I dissent.

### I.

With respect to both intentional murder and wanton murder, the defendant was entitled to a correct instruction on the statutory defense of justification, and the omission of such an instruction constituted prej-

udicial error, even palpable error resulting in manifest injustice.

First, adequate instruction on justification was mandated by the state of the evidence, from which the jury might have found that the defendant had acted from a perceived need to protect himself. Excerpts from the defendant's testimony convey the gist, and the plausibility, of his justification defense:

Well, we was covering tators and I seen he was trying to start a racket. He told me, "You ain't covering them right."

.    .    .    .    .

Well, I just walked over and throwed my hoe down. I know he was trying to start a racket. And I just walked off and went over to them other people's house and sat there.

.    .    .    .    .

Well, I stayed over there and Gene come after me.

.    .    .    .    .

Yeah, twice. ... [W]hen I wouldn't go, he sent Gary Wayne over there and told them they was some fellow over at my house wanting to see me ... Well, I went back down the road and he motioned for me, when I got back down there in front of his house, he said, "Come back over here a minute." And I thought he was aiming to apologize, you know.

.    .    .    .    .

Yeah, and when I got back over there, he come at me and knocked me down and started beating me.

.    .    .    .    .

Well, he finally let me up.

.    .    .    .    .

I reached for my cigarettes and I never had none. I might have had a pack, but I never had no cigarettes. I said, "I am going over to the house and get me some cigarettes."

.    .    .    .    .

I said, "I am going to kill you." He said "You son of a bitch, I will kill you before you get over there to the house." And I walked as fast as I could walk, until I got to the fence there and then I broke into a run and I never even took time to shut my gate and went in the house. And I went plum back in my bedroom and got my gun out of the closet and just brought it there and set it in the corner.

.    .    .    .    .

Well, he said he wanted to kill me.

.    .    .    .    .

Why, yes, I was afraid of him.

.    .    .    .    .

But I just seen him coming down through there with a gun in his hand.

.    .    .    .    .

Well, he come down through there and I seen he was aiming to get behind that apple tree, and he was aiming to fall in on my house with that gun.

.    .    .    .    .

He shot—he shot in the trailer I had, and he has shot in this house I've got now.

.    .    .    .    .

Well, he was aiming to get behind that and start shooting at me, and I shot the gun right out of his hand.

.    .    .    .    .

And he bent over and tried to get it with the same hand and it flipped away from him. I waited, and he reached and *got it*[1] with the other hand, and I didn't want to shoot him (and I love my brother as good as anybody loves their brothers) and he *picked it up*[2] and I just turned my head and I just shot I don't know how many times. I just turned my head and shot some shots over through there.

(Emphasis and footnotes added.) The defendant also testified that his brother had beaten him in the past, had pulled a gun on him, and had struck him with a gun. When

---

**1.** It is interesting to compare the actual testimony with the majority's characterization of the evidence to be that the victim had *"tried* to pick [the gun] up with the other hand" (*ante* at 398, emphasis added), and that "the victim was *try-* ing to pick up the pistol with the other hand" (*ante* at 399, emphasis added).

**2.** See Note 1, *supra.*

asked why he shot Gene, he replied, "Because he was aiming to shoot me." The testimony that, with the very first shot, Donald had shot a gun from Gene's hand (necessarily implying that Gene had a gun *in his hand before* the shooting began), reinforced by the fact that Gene was wounded in the hand, strongly supports the defendant's assertion that he believed Gene was preparing to open fire. Moreover, it would be a fair inference that the subsequent shots, including the fatal shot, would not have been fired had Gene not retrieved his weapon.

Given this testimony, which is perfectly consistent with the events of that day, it is utterly beyond question that, afforded the opportunity, a jury might reasonably have found that the defendant had acted under a perception (either reasonable, wanton, or reckless) that such action was necessary in self-defense.

Secondly, contrary to the majority's implication, the trial court gave *no* sufficient self-defense instruction apropos of *any* of the homicide instructions. The so-called "self-defense instruction in connection with intentional murder and its lesser included offenses" (*ante* at 398) required for conviction a finding "that [Sizemore] was not privileged to act in self-protection." Beyond that, the instructions were silent as to justification—the subject of one entire chapter (503) of the Kentucky Revised Statutes! There was no definition of the privilege of self-protection, no reference to the circumstances which give rise to the privilege, and no opportunity for the jury to find the defendant innocent of those offenses for which justification is a defense, based upon the defendant's state of mind regarding the need for self-protection. *Cf. Pace v. Commonwealth*, Ky., 561 S.W.2d 664 (1978). The terse reference to self-protection was patently insufficient to advise the jury of the very essence of statutory justification, i.e., that the use of deadly physical force was justifiable if the defendant believed such force to be necessary to protect himself against death or serious physical injury. KRS 503.050.

To all of this the majority would reply, I think, that despite the evidence of justification, and despite the inadequacy of the self-protection instruction, any error in this regard was harmless, because "[t]he defendant was convicted of wanton murder to which the self-defense instruction does not apply as clearly stated in *Shannon v. Commonwealth*, Ky., 767 S.W.2d 548 (1989)." (*Ante* at 398.)

With utmost respect, I submit that *Shannon* is demonstrably wrong, and must be overruled as contrary to statute, contrary to its own cited authorities, and contrary to the Constitution.

*Shannon* is fraught with self-contradiction. Early on, *Shannon* states:

> [T]he question whether the murder instructions should have been limited only to intentional murder is not preserved for appeal and *will not be decided here*.

767 S.W.2d at 549 (emphasis added). But then, as the underpinning of its holding, *Shannon* concludes that:

> There is no place in the Penal Code for an instruction to find the defendant guilty of wanton murder if the accused acted from an erroneous belief in the need for self-defense.

*Id.* at 552. But no, on the third hand:

> [I]t is entirely possible that a jury would view the defendant's mental state as knowing or purposeful indifference adding up to wantonness "manifesting extreme indifference to human life."

*Id.* at 552. *Shannon* decides not to decide the issue, and then decides it—both ways.

The avenue to the *Shannon* result is this: assuming that a wanton murder instruction should not be given where the defendant asserts the self-defense (supported by evidence), the defendant must object to the improper instruction itself, rather than insisting that it be qualified by an instruction on justification. But this avenue has since been closed, the Court having subsequently held that a plausible assertion of self-defense *does not* foreclose a wanton murder instruction. *Barbour v. Commonwealth*, Ky., 824 S.W.2d 861 (1992). Today's majority, curtly applying the *Shannon* holding, fails to acknowledge

that the principal assumption underlying that holding has already been abandoned.

Insofar as it holds that a wanton murder instruction was proper, despite the evidence of justification, *Barbour* comports with our statutes,[3] whereas *Shannon's* contrary assumption does not. In the present case, likewise, the wanton murder instruction was properly included. Our murder statute, KRS 507.020, reads, in relevant part:

> (1) A person is guilty of murder when:
>
> (a) With intent to cause the death of another person, he causes the death of such person ...;
>
> (b) ... under circumstances manifesting extreme indifference to human life, he wantonly engages in conduct which creates a grave risk of death to another person and thereby causes the death of another person.

The elements described by subsection (1) part (a) are commonly said to constitute "intentional murder," which specifically requires an intent to cause death.

Subsection (1) part (b) of the murder statute requires, in order to establish what is commonly called "wanton murder," two things with respect to state of mind: 1) manifest indifference to human life; and 2) wantonness with respect to the result[4]— that is, conscious disregard of a substantial (here, specifically, "grave") and unjustifiable risk of death. *See* KRS 501.020(3), defining "wantonly." Absent justification, a jury might well find that an intentional homicide manifests extreme indifference to human life;[5] and clearly an actor without justification intending to cause death con-

sciously disregards a grave and unjustifiable risk of death. Under our statutes, then, intentional murder and wanton murder are not mutually exclusive. *All* murders are wanton murder; some of them fall into a subset—intentional murder—which may affect sentencing,[6] but these are nonetheless wanton murder as well.[7] Technically, a wanton murder instruction may be given in any case wherein an intentional murder instruction is appropriate, as well as in certain other cases outside the scope of intentional results.

In the present case, justification aside, the jury might reasonably have found Sizemore guilty of wanton murder, regardless of whether he intended to cause death or was *otherwise* wanton with respect to the result, under circumstances manifesting extreme indifference to human life.

On the other hand, and *justification no longer aside*, a properly instructed jury might well have found him not guilty of murder at all. Proper instructions would have included complete instructions on justification with respect to both intentional and wanton murder. *Justification as defined in Chapter 503 is a defense to a charge of wanton murder.*

The narrow holding of *Shannon*, that a justification instruction is not available as a defense to a charge of wanton murder, derived from the premise that "self-defense does not apply if the accused's belief in the need for self-defense was wanton." *Shannon, supra,* 767 S.W.2d at 552. This premise is itself an overly broad mis-reading of KRS 503.120(1):

**3.** On the other hand, *Barbour's* dictum that the trial court erred by instructing on justification with respect to wanton murder is terribly wrong. Like today's decision, that dictum rests feebly on the *Shannon* result, after removing its cornerstone.

**4.** As will be shown, wantonness with respect to a belief in the need for self-defense, while it may provide a basis for conviction of lesser wanton crimes, is never sufficient to permit conviction of wanton murder.

**5.** *Cf.* Model Penal Code § 210.2, comment, pp. 21–22 (Am.Law Inst. 1980): "[C]ases of provocation or other mitigation apart, purposeful or

> knowing homicide demonstrates precisely such indifference to the value of human life."

**6.** *See,* e.g., KRS 532.025(2)(a) 6 and 7.

**7.** This literal reading of the statutes does not vitiate the defense of extreme emotional disturbance. One, by the terms of the statute, the defense applies to offenses defined "under this subsection," i.e., subsection (1) of KRS 507.020, including paragraphs (a) and (b). Two, a person acting "under extreme emotional disturbance for which there was a reasonable explanation or excuse," cannot be said to manifest extreme indifference to human life.

When the defendant believes that the use of force upon or toward the person of another is necessary for any of the purposes for which such belief would establish a justification under KRS 503.050 to 503.110 but the defendant is wanton or reckless in believing the use of any force, or the degree of force used, to be necessary or in acquiring or failing to acquire any knowledge or belief which is material to the justifiability of his use of force, the justification afforded by those sections is unavailable in a prosecution for an offense for which wantonness or recklessness, as the case may be, *suffices* to establish culpability.

(Emphasis added.) One major flaw in the *Shannon* premise is its failure to recognize that the statute renders a justification defense unavailable *only* for an offense for which wantonness or recklessness *suffices* to establish culpability. For all its pains to distinguish wanton murder from other wanton crimes, *Shannon* fails to recognize the paramount statutory distinction: wantonness *suffices* to establish culpability for manslaughter in the second degree, but it *does not suffice* to establish culpability for wanton murder, which requires the additional state-of-mind element of manifest extreme indifference to human life.[8]

By its very terms, then, KRS 503.120 does *not* make a justification defense unavailable to a charge of wanton murder. We are left with the terms of KRS 503.020: "In any prosecution for an offense, justification, as defined in this chapter, is a defense," and with the terms of KRS 503.050:

(1) The use of physical force by a defendant upon another person is justifiable when the defendant believes that such force is necessary to protect himself against the use or imminent use of unlawful physical force by the other person.

(2) The use of deadly physical force by a defendant upon another person is justifiable under subsection (1) only when the defendant believes that such force is necessary to protect himself against death, serious physical injury, kidnapping, or sexual intercourse compelled by force or threat.

As the statutes reveal, the General Assembly intends that a defendant who has used deadly physical force in the belief that such force was necessary to protect himself against death or serious physical injury is not guilty of wanton murder. The rationale for this legislative decision is similarly plain: where the actor believes in the need to protect his life, the circumstances, while they may demonstrate wantonness, *cannot* manifest extreme indifference to human life.

To the extent that it would deny a self-defense instruction, the *Shannon* premise is also flawed with respect to the lesser offenses of manslaughter in the second degree and reckless homicide. In distinguishing state of mind with respect to results from state of mind with respect to the need for self-protection, *Shannon* itself recognizes that the latter, like the former, is a jury question. And the question must be posed in terms of justification, pursuant to KRS 503.120(1).

*Shannon* manages to conclude that its holding is supported by Cooper and Lawson. *See* William S. Cooper and Robert G. Lawson, Special Comment, *Self-Defense in Kentucky: A Need for Clarification or Revision*, 76 Ky.L.J. 167 (1987–88). In fact, the *Shannon* holding represents the antithesis of their (and much of its own) analysis. According to Cooper and Lawson:

A ... misconception which has appeared in the [pre-*Shannon*] opinions of the supreme court is that the defense of self-protection is not as applicable to uninten-

8. "In a prosecution for murder ... the [Model Penal] Code calls for the further judgment whether the actor's conscious disregard of the risk, under the circumstances, manifests extreme indifference to the value of human life." Model Penal Code § 210.2, comment, p. 21 (Am. Law Inst. 1980).

"The extreme indifference standard states a culpability requirement in addition to those used generally throughout the Model Code." *Id.* p. 22, n. 37.

tional crimes as it is to intentional crimes.... These statements imply that self-defense belongs exclusively to the realm of intentional crimes. Neither legal authority nor logic supports such a position.

Limiting self-defense to intentional crimes would lead clearly to irrational results ... unless one concludes that an actor trying to defend himself without causing another's death is more culpable than one who tries to defend himself by intentionally causing the death of another.

*Id.* at 189–190. *Shannon* perpetuates the misconception, and promotes such irrational results as today's.

Elsewhere, Cooper and Lawson observe: The current statutory scheme of KRS sections 503.050 and 503.120(1) establishes a sound framework within which to resolve self-defense claims. The statutory scheme is fair because it groups offenders according to culpability, logical because it treats all defenses of justification identically, and complete because all offenses involving force against another person ... trigger an application of the same set of self-defense rules.

In stark contrast, *Shannon* violates the statutory scheme, and deprives defendants such as Sizemore of the right of self-defense. In addition, when there is evidence that the defendant acted to protect her/his own life, the denial of a justification instruction permitting the jury to decide issues of justifiability is a denial of the defendant's inalienable and constitutionally guaranteed right to defend her/his life. Ky.Const. § 1, First.

In simplest terms, the Constitution, the statutes and the authorities recognize that a murder *conviction* may not be had if the jury believes that the defendant acted from a perceived need for self-defense. Moreover, *no* conviction may be had if the jury believes that the defendant's belief was reasonably founded. Untenably, *Shannon* would preclude conviction by precluding a wanton murder instruction. But both the

elements of murder and the elements of justification are inevitably matters which must be decided by a jury. In order to decide the questions according to law, the jury must be fully instructed in the law.

In the present case, I think it will not be denied that a jury could find—indeed, this jury *did* find—that the defendant had used deadly physical force against the victim. KRS 503.010(1) reads:

"Deadly physical force" means force which is used with a purpose of causing death or serious physical injury *or which the defendant knows to create a substantial risk of causing death* or serious physical injury.

(Emphasis added.) The conviction for wanton murder required, as an element of the offense, a finding that Sizemore was "aware of ... a substantial ... risk that the result [i.e., death] [would] occur...." KRS 501.020(3), defining "wantonly."

Whether the fatal shot was aimed or fired blindly in Gene's known direction, the evidence would certainly support an inference that Donald knew that he was creating a substantial risk of death or serious physical injury to Gene. As the quoted testimony reveals, there was also considerable evidence to support an inference that Donald believed that the use of deadly force was necessary in order to protect his own life against the imminent use of unlawful deadly force by Gene, and that Donald's conduct was precipitated by that belief, regardless of whether the fatal shot was aimed or blind. Given an opportunity, therefore, the jury might well have found that Donald's use of force was justifiable pursuant to KRS 503.050, except as limited by KRS 503.120. And, as has already been established, *supra*, KRS 503.120 does not negate justification as a defense to a charge of wanton murder. Ergo, the wanton murder instruction ought to have been qualified by a self-protection instruction in accordance with Chapter 503.

This issue was preserved for review when the defense requested and tendered a self-defense instruction.[9] While not stat-

---

**9.** The requested instruction read: "If at the time the defendant, Donald Sizemore, shot Gene Size-

ing the full applicable law, the tendered instruction *was* entirely correct with respect to the charge of murder. Moreover, it sufficed to put the trial court on notice that the defense was insisting on a thorough justification instruction. Being thus notified, and being charged with the duty to instruct fully on applicable law, the trial court committed reversible error in refusing to instruct on justification pursuant to Chapter 503, and no matter that the error was mandated by our misinterpretation of the law in *Shannon*. Moreover, because the defendant was deprived of a defense to the charge on which he was convicted, a defense to which he was entitled by statute and Constitution, and which was supported by substantial evidence, the prejudice is obvious.

It is so obvious as to be manifest, and even if the issue is to be considered as not properly preserved, the failure to follow statutory law renders the verdict in this case wholly unreliable, and the conviction should be reversed on grounds of palpable error resulting in manifest injustice. RCr 10.26.

## II.

The trial court also committed reversible error in overruling the objection to Deputy Davenport's testimony that the defendant had "said ... he got tired of him [Gene] whipping him and he settled it himself."

Deputy Davenport arrested Donald at the scene of the shooting on April 27, 1989, and took his statement shortly thereafter. On December 1, 1989, the defense filed a motion pursuant to RCr 7.24 and 7.26 for discovery and inspection of certain evidence "[e]ither within the possession, custody or control of the Commonwealth or [which] by the exercise of due diligence may become known to the Commonwealth." Among the items that the defense desired to inspect or discover were: "[a]ll oral, written or recorded statements made by the defendant ... whether reduced to writing or not." On that same day, the court ordered the

Commonwealth to provide the discovery requested. The case went to trial on June 6, 1990. Deputy Davenport testified that Donald had told him that he had got tired of Gene whipping him and had settled it himself. Objection was raised because no such statement by the defendant had been provided to the defense pursuant to the continuing discovery order entered more than six months earlier.

Somehow, the majority concludes that this putative statement of the defendant was "not significantly different" from other statements, to the effect that Gene had beaten Donald and that Donald had shot Gene, which had been provided pursuant to the discovery order. I see a glaringly significant difference, affecting the defense. The statement complained of, unlike the statements furnished to the defense, indicates that the shooting was a planned retaliation, rather than a response to immediate fear upon Gene's appearing with a weapon, allegedly drawn.

Deputy Davenport was the investigating and arresting officer. He took the oral statement from the defendant on the day of the crime, more than a year before trial. For purposes of RCr 7.24, the circumstances compel the presumption that the Commonwealth's Attorney was aware of the statement. It follows that the Commonwealth, with respect to this statement, failed to comply with the discovery order, which fact was brought to the attention of the court by way of timely objection. The trial court's options in that event are delineated by RCr 7.24(9):

> [T]he court may direct such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other orders as may be just under the circumstances.

Because this surprise statement attributed to the defendant was seriously inconsistent with the prepared defense, it is clear to me

more, he believed that Gene Sizemore was then and there about to use physical force upon him that could result in death or serious physical injury, Donald Sizemore was justified in using deadly physical force against Gene Sizemore, and you will find him not guilty."

that refusing all relief was not "just under the circumstances," and constituted prejudicial error.

Even if we must live by the unjust *Shannon* rule that the formal justification defense provided in KRS Chapter 503 does not apply to a charge of wanton murder, justification in general cannot be divorced from the charge, by *any* interpretation of the wanton murder statute, however strained. The very definition of wantonness is rife with considerations of justification. According to KRS 501.020(3):

> A person acts wantonly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and *unjustifiable* risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe *in the situation.*

(Emphasis added.) Moreover, the wanton murder statute itself requires *"circumstances* manifesting extreme indifference to human life." KRS 507.020(1)(b).

In deliberating the charge of wanton murder, the jury was under instructions to consider whether the risk created by Donald's action was unjustifiable, whether his actions were unreasonable in the situation, and whether the circumstances manifested extreme indifference to human life. The essence of the defense was that Donald, seeing Gene approach with a drawn gun, feared for his own safety, and that therefore the shooting was justifiable, reasonable in the situation, and that Donald's actions in the circumstances did not manifest extreme indifference to human life. The surprise statement strongly implied the contrary—that the shooting was premeditated aggression rather than an immediate and perhaps justifiable response to a perceived threat. The inadmissible evidence lent great weight to inferences that Donald's action was unjustifiable, unreasonable in the situation, and demonstrative of extreme indifference to human life. All of these considerations were determined adversely to the defendant. The inescap-

able conclusion is that admission of the statement over objection constituted highly prejudicial, reversible error.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

Justice Combs has also dissented. I agree with Justice Combs' dissent, Part II, outlining why the trial court committed reversible error in overruling the objection to Deputy Davenport's testimony that the defendant had "said ... he got tired of him [Gene] whipping him and he settled it himself." I agree with Justice Combs that "this surprise statement attributed to the defendant was seriously inconsistent with the prepared defense," that there is a "glaringly significant difference" between this evidence and what the defense had been told regarding the appellant's statements at the scene, and that failure to provide relief in the circumstances constituted error. This evidence shot right through the heart of the appellant's claim of self-defense, and should have been suppressed when not properly disclosed in pre-trial discovery.

Further, I agree with Justice Combs that this case should be reversed on failure to provide self-defense instructions adequate to the situation. KRS 503.050(2) specifies:

> "The use of deadly physical force by a defendant upon another person is justifiable ... when the defendant believes that such force is necessary to protect himself against death [or] serious physical injury,...."

The jury was never told that the appellant is entitled to shoot his brother in self-defense if "such force is necessary to protect himself against death [or] serious physical injury." The jury was never told that even if such belief was not objectively reasonable, a subjective belief reduces criminal liability to involuntary manslaughter or reckless homicide, depending on whether the belief was wanton or reckless. As explained in *Shannon v. Commonwealth,* Ky., 767 S.W.2d 548, 551 (1989):

> "A subjective belief in the need for self-defense, which is objectively wanton or

reckless, is a 'circumstance' falling within the definition of wanton or reckless behavior, punishable under Manslaughter II or Reckless Homicide, as the case may be."

But here I must part company with Justice Combs. The *Shannon* opinion, which I drafted, was *never intended* to authorize trial courts to instruct on wanton murder in self-defense cases of this nature, which include both the claim of self-defense and a further claim that even though a lethal weapon was directed at the deceased, there was no intent to cause his death. On the contrary, proper instructions in such cases should be restricted to an intentional murder instruction qualified by a full explanation of self-defense as a justification. Under this regimen the jury may convict of intentional murder if they disbelieve the claim of self-defense, or acquit if they believe the defendant acted in self-defense and his belief in the need to so act was objectively reasonable, or convict of the lesser criminal homicide offenses of involuntary manslaughter or reckless homicide if the jury accepts as fact the defendant's claim that he believed in the need for self-defense but further believes that such subjective belief was either wanton or reckless.

*An instruction on wanton murder fits nowhere in this configuration.* As explained in *Shannon, supra* at 551–52, and in the Commentary to the Penal Code, KRS 507.020, wanton murder is an entirely different type of criminal offense involving "conduct inferring a 'knowing' or 'purposeful' indifference that death will result."

In fact situations such as the present one, if the jury believed the appellant, when he shot his brother, did not intend to cause his death but did not act in self-defense, it should convict him of first-degree manslaughter, KRS 507.030(1)(a):

"A person is guilty of manslaughter in the first degree when:

(a) With intent to cause serious physical injury to another person, he caused the death of such person...."

*One* sentence in *Shannon* has been taken out of context and has caused a serious miscarriage of justice in the present case, and in a number of cases tried since *Shannon* wherein the defendant killed with a lethal weapon in self-defense, but also claimed that he did not mean to kill. That sentence is:

"The imperfect justification ["the subjective belief in the need for self-defense [which] fails the objective standard of reasonableness"] calls for conviction on the lesser included offense of Manslaughter II or Reckless Homicide because of the wanton or reckless state of mind, but *not* for wanton murder." [Emphasis original.] *Id.* at 552.

The intent in *Shannon* was to tell trial courts *not* to instruct on wanton murder in cases like the present one. But the *Shannon* case has been misconstrued as advising the opposite—to instruct on wanton murder, but omit self-defense. The result is what we see in this case.

I attempted, without success, to explain how *Shannon* is being misapplied in my dissenting opinion in *Barbour v. Commonwealth*, Ky., 824 S.W.2d 861, 865 (1992). Now I attempt, yet again, to explain this terrible mistake.

I take full responsibility for the opinion in *Shannon* being misapplied. In *Shannon* proof of guilt of intentional murder was overwhelming. There was no miscarriage of justice in convicting Shannon of wanton murder rather than intentional murder, albeit the instruction was erroneous. The conviction was affirmed, the opinion stating:

"Since the accused requested that the instructions include wanton murder, and there was ample evidence to convict him of murder, he cannot complain." 767 S.W.2d at 552.

It was the combination of the opinion explaining that an erroneous, subjective belief in the need for self-defense does not call for an instruction on wanton murder, plus the holding that the conviction should be affirmed, that has caused the present confused state of affairs wherein wanton murder instructions are given where completely unjustified, as in the present case.

Of course, convictions flow easily from this source because, as the prosecutor argued here, under the instruction as given the appellant's version of what occurred would appear to convict him of wanton murder out of his own mouth.

Thus, while I agree with my colleague, Justice Combs, that the *Shannon* holding has caused serious injustice in this case and in a number of others, I submit that this is because the opinion in *Shannon* has been misunderstood and misapplied.

As stated in *Sizemore's* brief:

"Appellant shot Gene. That he did not draw a bead on him does not diminish his specific intent to shoot him if that was necessary to stop him. Wanton murder does not include that kind of intention."

In this case, if the *Shannon* opinion had been correctly applied, there would have been no instruction for wanton murder, and, of course, no conviction for it. Since the appellant has been found not guilty of intentional murder, he should be retried under instructions covering Manslaughter I, with self-defense fully explained, and providing for conviction of Manslaughter II or Reckless Homicide if the jury believed his claim of self-defense but further believed he was wanton or reckless in believing he needed to act in self-defense.

I attach as an Appendix to this Dissenting Opinion a schematic explaining the options under the Penal Code as it applies to this case.

### APPENDIX

Sizemore said three things:

1) He shot at his brother intentionally;

2) In self-defense;

3) And did not mean to kill him.

Under the Model Penal Code AND our statutes deriving from it, if the jury believes:

1) Sizemore did not actually believe he needed to shoot at his brother in self-defense, and he meant to kill him, it is *Intentional Murder.*

2) Sizemore believed he needed to shoot at his brother in self-defense, and such belief was reasonable, the shooting was justified and he should be *Acquitted.*

3) Sizemore actually believed he needed to shoot at his brother in self-defense, and he thereby caused his brother's death, but his belief was wanton (or reckless), he is guilty of *Manslaughter II (or Reckless Homicide)* BUT NOT WANTON MURDER. Such belief is an *incomplete justification* which diminishes legal culpability. If the jury believes this was his state of mind, he *cannot* be convicted for *Wanton Murder*, which is the legal equivalent of *Intentional Murder.*

4) When Sizemore shot at his brother, he did *not* believe he needed to act in self-defense, but he did not mean to kill him. This is voluntary manslaughter; he is then guilty of *Manslaughter I.*

THERE IS NO PLACE IN THIS STRUCTURE OF POSSIBLE OFFENSES FOR A WANTON MURDER INSTRUCTION OR A WANTON MURDER CONVICTION.