**David Lee JETT, Appellant,**

**v.**

**COMMONWEALTH of Kentucky,**
**Appellee.**

**No. 92–CA–1121–MR.**

Court of Appeals of Kentucky.

Oct. 8, 1993.

William M. Butler, Jr., Louisville, for appellant.

Chris Gorman, Atty. Gen., Laura Early, Asst. Atty. Gen., Frankfort, for appellee.

Before GARDNER, HOWERTON and McDONALD, JJ.

HOWERTON, Judge.

David Lee Jett, Jr., appeals from a judgment of the Fayette Circuit Court sentencing him to five years in prison and fining him $5,000 for trafficking in cocaine. We find no error and affirm.

On the evening of November 13, 1991, Jett was present at the corner of Rose and Second Streets, where the Lexington Police Department, due to reports of drug trafficking, was conducting an undercover surveillance. Jett testified that he was driving a friend to his mother's nearby home when he noticed police searching people on this corner and decided to stop and see what was happening.

Officer Mario Russo testified at trial that he was hidden from view 10 to 15 feet away from where Jett was standing when he observed Jett talk to a man at the scene, walk up an alley, and pull a plastic bag containing a white powdery substance from the inside pocket of his coat. Jett handed the bag to the man who pulled cash out of his pocket and gave it to Jett. Jett pocketed the money. Officer Russo then saw Jett take another plastic bag from his coat and throw it beside a "Herbie" garbage bin.

Shortly thereafter, Jett was approached by another officer, Detective Compton, who asked him if he would consent to a search. Jett consented, and the search revealed $427.20 in cash and a beeper. The plastic bag containing cocaine was found beside the "Herbie" garbage bin by another officer after Officer Russo told him where to look. Jett was then taken into custody. He was found guilty of trafficking in cocaine—a Schedule II Narcotic, sentenced to five years in prison, and fined $5,000. A final judgment was entered on April 28, 1992, from which this appeal is taken.

Jett presents several allegations of error on the part of the trial court. He first claims that his right to cross-examination was impermissibly restricted when he was precluded from questioning Officer Russo about Russo's precise location at the time of the surveillance. The question thus presented has not been specifically addressed in any Kentucky case. Authorities outside the Commonwealth, however, provide considerable guidance.

■ Given the historical and practical importance of the right of cross-examination, any limitation on that right beyond the typical evidentiary rules must be justified by weighty consideration. *See Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 1045–1046, 35 L.Ed.2d 297 (1973). In *United States v. Green,* 670 F.2d 1148 (D.C.Cir. 1981), the defendant challenged a trial court ruling that the state need not reveal its surveillance location. In upholding the trial judge's position, the court stated at 1155:

We believe that policy justifications analogous to those underlying the well-established informer's privilege support a qualified privilege protecting police surveillance locations from disclosure. Like confidential informants, hidden observation posts may often prove to be useful law enforcement tools, so long as they remain secret. Just as the disclosure of an informer's identity may destroy his future usefulness in criminal investigations, the identification of a hidden observation post will likely destroy the future value of that location for police surveillance. The revelation of a surveillance location might also threaten the safety of police officers using the observation post, or lead to adversity for

cooperative owners or occupants of the building. Finally, the assurance of nondisclosure of a surveillance location may be necessary to encourage property owners or occupants to allow the police to make such use of their property. For all these reasons, we are persuaded to recognize what might be termed a "surveillance location privilege."

The court went on to say that because the circumstances would differ from case to case, the trial court should have discretion to decide what procedure to use at suppression hearings to balance the competing interests of the defendant and the prosecution. *Id.* at 1156.

While the *Green* rule applied specifically to the right to suppress examination regarding certain aspects of surveillance in the suppression-hearing context, one year after *Green* was decided, the District of Columbia Circuit, in *United States v. Harley*, 682 F.2d 1018, 1020 (D.C.Cir.1982), extended the surveillance location privilege to trial, noting that, like the informer's privilege, it "is to be applied through a balancing test controlled by 'the fundamental requirements of fairness'" enunciated in *Roviaro v. United States*, 353 U.S. 53, 60, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957).

The *Harley* court had no difficulty in concluding that, under the facts of its case, balancing the conflicting interests justified the application of the surveillance location privilege. It was noted that even if the police had abandoned the post as a surveillance site so that their safety was not relevant, the "safety of the cooperating apartment owner or tenant remains a relevant consideration as does the willingness of other citizens to cooperate with the police in this fashion in the future." *Harley, supra,* at 1020. In upholding the privilege, the court stressed that Harley had made no attempt to demonstrate a need for the evidence or that alternate methods were unavailable. On the other hand, Harley's counsel had been allowed to elicit from the government witnesses the fact that their surveillance post was between 20 and 30 yards from the place where Harley was seen selling heroin and was approximately 10 to 12 feet above street level. Neither witness was asked about his ability to see.

■ The instant case presents a similar situation. Jett never demonstrated a need to know the exact location of the surveillance post. He presented no evidence that there was some reason to believe Officer Russo's view was obstructed or that the street lighting was poor at any particular vantage point. On the other hand, Officer Russo's testimony was clear and positive in identifying Jett as the person involved in these criminal activities. The officer further testified that the light and weather were good.

Jett attempts to distinguish *Harley* by noting that in *Harley* the drug transaction was videotaped and that the videotape showed an unobstructed view. However, the court in *Harley* stated that the testimony without the evidence of the videotape warranted the application of the surveillance location privilege. While we conclude that a surveillance location privilege should exist in Kentucky, we recognize a need to apply it only in those cases where it is justified. We determine that the conflicting interests of need to restrict and need to know or right to cross-examine were properly balanced in this case.

Prior to trial, Jett moved to obtain the information in order to examine the location. The Commonwealth opposed the motion because it would compromise the location for future use and jeopardize the safety of the property owners. Both sides filed briefs on the issue, and although we do not have available any written ruling by the trial judge, on three subsequent occasions, Jett's oral requests for disclosure were orally denied. We agree with the result in this case.

■ Jett next asserts that the trial court erred in not granting his motion to set aside the jury panel when one prospective juror stated, in the presence of the entire panel, that a drug trafficker killed his daughter. This argument is without merit. In *Francis v. Commonwealth*, Ky., 468 S.W.2d 287, 291 (1971), the Kentucky Supreme Court was unpersuaded by a similar argument when a venireman remarked, "If he was guilty I would give it to him," and that remark was overheard by other jurors. The

trial court here correctly struck the juror and Jett has proven no prejudice by the trial court's decision not to strike the whole panel. Bias on the part of jurors is never to be presumed but must be proven. *Watson v. Commonwealth*, Ky., 433 S.W.2d 884 (1968).

■ The third assignment of error involves the trial court's refusal to grant Jett's motion to exclude evidence concerning the cash and beeper he was carrying when he was arrested. Jett contends that the existence of these items on his "person could not prove that he was trafficking in drugs and would only inflame the jury because of the stereotypical view that all drug sellers have cash and beepers." As support for his argument, Jett cites *Dyer v. Commonwealth*, Ky., 816 S.W.2d 647 (1991). In *Dyer*, the court held that the relevance of certain items was not established, as the victim's testimony did not link them to the crime charged. In the instant case, the cash and beeper (unlike the pictures in *Dyer*) were found on Jett's person at the time of arrest and were relevant as circumstantial evidence, especially in light of Officer Russo's testimony that he saw Jett take money from a third person. In any event, even in *Dyer*, the matter was left to the trial judge's discretion. It is within the sound discretion of the trial judge to determine whether the probative value of evidence is outweighed by its possible prejudicial effect and to admit it or exclude it accordingly. *Rake v. Commonwealth*, Ky., 450 S.W.2d 527 (1970). We find no error as to this issue.

■ Jett next argues that it was reversible error for the trial court to permit testimony that a drug transaction in fact took place because this invaded the province of the jury. The record shows that Jett's motion for a mistrial came when Officer Russo had referred to him as a drug dealer. After an admonition by the court, the witness (Russo) did not again refer to Jett as a "drug dealer." He instead described what he observed and referred to the exchange of cash for a plastic bag containing a white powdery substance as a drug transaction. A police officer may make inferences from the evidence. *Kroth v. Commonwealth*, Ky., 737 S.W.2d 680 (1987). The admonition was suf-ficient, and there was no error in permitting Officer Russo's other testimony.

■ Finally, Jett complains that the trial court erred in refusing to grant his motion for a directed verdict of acquittal due to insufficient evidence. We cannot agree. A careful review of the record supports the denial of the motion.

The test for determining whether a defendant is entitled to a directed verdict of acquittal was set out in *Commonwealth v. Sawhill*, Ky., 660 S.W.2d 3, 5 (1983): "[i]f under the evidence as a whole it would not be clearly unreasonable for a jury to find the defendant guilty, he is not entitled to a directed verdict of acquittal," (quoting *Trowel v. Commonwealth*, Ky., 550 S.W.2d 530, 533 (1977)). The *Sawhill* court explained the test by stating:

> The trial court must draw all fair and reasonable inferences from the evidence in favor of the party opposing the motion, and a directed verdict should not be given unless the evidence is insufficient to sustain a conviction. The evidence presented must be accepted as true. The credibility and the weight to be given the testimony are questions for the jury exclusively.

There was sufficient evidence to take the question to the jury under the *Sawhill* test. The jury apparently believed Officer Russo's testimony rather than Jett's—which is within its province.

The judgment of the Fayette Circuit Court is affirmed.

All concur.