John WEAVER, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 96–SC–170–MR.

Supreme Court of Kentucky.

Oct. 30, 1997.

Robert E. Harrison, Harrison & Goin Law Firm, Bowling Green, for Appellant.

A.B. Chandler, III, Attorney General, Matthew D. Nelson, Assistant Attorney General, Frankfort, for Appellee.

COOPER, Justice.

Appellant was indicted and convicted in the Simpson Circuit Court of first-degree trafficking in a controlled substance and second-degree persistent felony offender for which he received an enhanced sentence of twenty years. He appeals to this Court as a matter of right. Ky. Const. § 110(2)(b).

The convictions are the result of a successful sting operation conducted by the Franklin City Police Department. On April 29, 1994, Detective Robert Huber met with his confidential informant, Billy Payne, for the purpose of setting up a controlled drug purchase. Huber searched Payne and his vehicle, placed a tape recorder on Payne's person, and gave Payne $40.00 with which to purchase the controlled substances. Payne departed in his own vehicle to execute the sting.

Payne testified that he drove to Morris Street where he encountered Appellant and three other persons in Appellant's vehicle. Payne entered the back seat of Appellant's car and stated his desire to purchase a quantity of cocaine. Appellant sold Payne "two rocks" of cocaine for $30.00. After the transaction, Payne returned to his own vehicle and rendezvoused with Detective Huber. Payne gave Huber the cocaine, the tape recorder, a written statement, and the remaining $10.00. Huber paid Payne $50.00 for his services. At trial, Payne admitted that he was paid for his participation in the operation and that he also had received leniency on his own drug charges in consideration for his services as a police informant. However, on cross-examination, Payne denied that he had been involved in any other drug sting operations. The Commonwealth concedes that this testimony was incorrect. Detective Huber testi-

fied that Payne had been involved in other drug buys for which he had been paid a total of approximately $500.00. However, Huber was unsure of the exact number of times Payne had participated in sting operations.

In addition, Detective Huber testified that the entire operation lasted fourteen minutes. He also testified that upon his return, Payne produced two rocks of cocaine, returned the unused $10.00 and the tape recorder, and gave Huber a written statement. The written statement did not relate the fact that three other men were present in Appellant's car at the time of the purchase. The tape recording was later determined to be inaudible. Weaver raises five issues on appeal.

## I. SUFFICIENCY OF THE EVIDENCE TO SUPPORT CONVICTION

■ Appellant asserts that since Payne committed perjury with respect to his involvement in previous sting operations, the entirety of his testimony must be disregarded. Of course, absent Payne's testimony, there was no evidence to support a conviction. He relies on *Warnell v. Commonwealth,* Ky., 262 S.W.2d 683 (1953). However, in *Warnell,* the witness continuously changed his story four or five times with regards to the actual facts of the crime. Even on the stand, he contradicted himself depending on which attorney was asking the questions. Payne's misstatement of fact was on a collateral issue which went only to his own bias as a witness. Since Detective Huber admitted that Payne's testimony in that regard was incorrect, Appellant was able to attack Payne's credibility at trial not only on the basis that he was a professional police "snitch," but also that he had lied on the witness stand.

■ The credibility of witnesses is for the jury. *Robinson v. Commonwealth,* Ky., 474 S.W.2d 107 (1971); *Carroll v. Kentucky & West Virginia Gas Company,* Ky., 403 S.W.2d 273, 274 (1966). Since Payne's false statement went only to an issue affecting his own credibility and not the facts of the case, *Warnell v. Commonwealth, supra,* is inapposite and Payne's testimony should not be stricken in its entirety. Thus, there was sufficient evidence to induce a reasonable juror to believe beyond a reasonable doubt that Appellant was guilty of selling cocaine to Payne. *Commonwealth v. Benham,* Ky., 816 S.W.2d 186 (1991).

## II. VIOLATION OF DISCOVERY ORDER

■ In paragraph 5 of the pre-trial discovery order, the Commonwealth was ordered to "provide the defendant with the names and addresses, if known, of all persons known by the Commonwealth to have been personally present at the scene during the commission of the offense charged." The Commonwealth's response was that only Appellant and Payne were present and did not identify the other three men alleged to have been in the vehicle at the time of the transaction. It appears that neither Detective Huber nor the Commonwealth's attorney was aware that any others were present until Payne so testified at trial.

Payne identified one of the eye-witnesses as Paul Robey, but claimed not to know the identity of the other two. Defense counsel did not ask for a continuance in order to locate Robey and did not make any other motions at that time. However, at the conclusion of the Commonwealth's evidence on the second day of trial, defense counsel moved for a mistrial because of the Commonwealth's violation of the discovery order. The requested relief would fall within the broad remedial powers granted by RCr 7.24(9).

■ As a general proposition, the Commonwealth cannot be required to disclose names of persons present at the time of the acts charged in the indictment. *Lowe v. Commonwealth,* Ky., 712 S.W.2d 944 (1986). However, the Commonwealth's failure to object to the discovery order was a waiver of any error in that regard. *Mounce v. Commonwealth,* Ky., 795 S.W.2d 375, 378 (1990).

■ A discovery violation justifies setting aside a conviction "only where there exists a 'reasonable probability' that had the evidence been disclosed the result at trial would have been different." *Wood v. Bartholomew,* 516 U.S. 1, ——, 116 S.Ct. 7, 10, 133 L.Ed.2d 1 (1995); *Kyles v. Whitley,* 514 U.S. 419, 432–

36, 115 S.Ct. 1555, 1565–66, 131 L.Ed.2d 490 (1995); *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383–84, 87 L.Ed.2d 481 (1985). The withholding of the identity of an alleged eye-witness to the crime ordinarily would prejudice a defendant's ability to prepare his defense. However, it developed that Robey was readily available for interview by defense counsel, who chose not to avail himself of the opportunity. The following occurred during the discussion on the motion for a mistrial:

> The Court: Paul Robey is no stranger to the court.... Have you made an effort to contact Paul Robey?
>
> Counsel: No, your honor.
>
> The Defendant: He's in the jail.
>
> The Court: Yes (unintelligible) ...
>
> Counsel: I went to the jail last night to talk to some people, but I didn't talk to Mr. Robey.

In other words, even after Robey's identity was revealed, defense counsel, who knew Robey was in jail, and who was at the jail himself for the purpose of interviewing other inmates during a trial recess, chose not to interview Robey to determine if he had any exculpatory information. Among the remedial measures available to a trial judge under RCr 7.24(9) is to grant a continuance to enable the defendant to investigate whether the belatedly provided information might be exculpatory. Here, defense counsel had an immediate opportunity prior to presenting his defense to interview Robey and determine whether he had information favorable to the defense. He cannot intentionally decline to avail himself of that opportunity and then claim on appeal that he was prejudiced. *Cf. Sweatt v. Commonwealth,* Ky., 550 S.W.2d 520, 523 (1977).

### III. INFORMANT'S PARTICIPATION IN OTHER STING OPERATIONS

■ During cross-examination of Detective Huber, defense counsel inquired as to exactly how many other sting operations Payne had participated in for the police and exactly how much he had been paid. Detective Huber professed to be unable to recall the specific number of stings or the total amounts paid to Payne. However, he did state that Payne had worked for the police in several other drug operations as a paid informant over an extended period of time and that he believed Payne had been paid less than a total of $500.00. Defense counsel then moved the court to compel Detective Huber to provide the specific information. The motion was overruled.

■ Appellant's claim in this regard is essentially a Confrontation Clause argument. U.S. Const., Amend. 6; Ky. Const. § 11; *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Williams v. Commonwealth,* Ky., 569 S.W.2d 139 (1978). However, once the essential facts constituting bias have been admitted, a trial court "may, of course, impose reasonable limits on defense counsel's inquiry into the potential bias of a prosecution witness, to take account of such factors as 'harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that [would be] repetitive or only marginally relevant....'" *Olden v. Kentucky,* 488 U.S. 227, 232, 109 S.Ct. 480, 483, 102 L.Ed.2d 513 (1988), *quoting Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986). Detective Huber gave the jury enough information to permit a fair appraisal of Payne's possible bias. The trial judge's ruling was a reasonable limitation on this exploration into Payne's motive or bias. *Quinn v. Neal,* 998 F.2d 526, 529 (7th Cir.1993).

### IV. SUPPRESSION OF EVIDENCE BECAUSE OF "SURVEILLANCE PRIVILEGE"

■ As mentioned *supra,* Detective Huber testified that the transaction was tape recorded, but the recording was determined to be inaudible. On cross-examination, defense counsel sought to obtain information as to the type of recording device that was used. Huber refused to furnish this information and counsel moved the court to compel the witness to respond. The motion was overruled. Appellant argues that a thorough cross-examination concerning the tape recorder; whether its volume and off/on controls could be manipulated by Payne, or whether Payne could muffle the recorder or

otherwise affect the audibility of the recording, was essential to his defense that the alleged drug transaction never occurred and that Payne fabricated the entire event in order to receive his $50.00 "snitch" payment from Huber.

■■■■ The trial judge sustained the objection to this inquiry on the basis of the so-called "police surveillance privilege" recognized by the Court of Appeals in *Jett v. Commonwealth,* Ky.App., 862 S.W.2d 908, 910 (1993). Prior to *Jett,* the surveillance privilege had never been recognized by our courts; nor is it found in Article V of the Kentucky Rules of Evidence. KRE 501 provides in pertinent part as follows:

> Except as otherwise provided by Constitution or statute or by these or other rules promulgated by the Supreme Court of Kentucky, no person has a privilege to:
>
> . . .
>
> (2) Refuse to disclose any matter.

The proper procedure for amending or adding to the Kentucky Rules of Evidence is established in KRE 1102 and 1103. These procedures do not include amendments or additions created unilaterally by either the General Assembly or the Supreme Court (although we are aware that the General Assembly has enacted post–1992 statutes which purport to create new privileges, *e.g.,* KRS 325.431, KRS 224.01–040). More specifically the rules do not permit the amendment or addition of any new rules of evidence by any court of this Commonwealth except the Supreme Court. Thus, the Court of Appeals exceeded its authority when it purported to adopt a "police surveillance privilege." We overrule *Jett v. Commonwealth* in that respect.

We are aware that the Federal courts recognize a "surveillance privilege" with respect to the types of devices used by police in surveillance operations in order to prevent criminal elements from learning information which would help them evade future surveillance. *E.g., United States v. Van Horn,* 789 F.2d 1492, 1508 (11th Cir.1986), *cert. denied,* 479 U.S. 854, 107 S.Ct. 190 (1986). However, the Federal Rules of Evidence contain no codified rules recognizing specific privileges, but rather permit common law development in criminal cases and require conformance with state law in civil cases. If a "police surveillance privilege" is to be adopted in this Commonwealth, it must be adopted in accordance with the procedures established in KRE 1102 and 1103.

We are unable to perceive how the identification of the type of tape recorder used in this transaction would permit criminal elements from learning information that would help them evade future surveillance. Nevertheless, Detective Huber admitted that the nature of this device was such that Payne could have intentionally affected its operation so as to prevent it from producing an audible recording of the transaction. Since that is the information Appellant sought to prove, any error in suppressing evidence which would further identify the type of recording device used was harmless.

## V. COMMENT ON APPELLANT'S SILENCE

■■■ During closing argument, the prosecutor stated the following:

> Keep in mind the only evidence in this case, the only evidence in this case—let me come by that one more time. The only evidence in this case as to whether Billy Payne did or did not buy two rocks of cocaine from John Weaver for $30 is that he did, because Billy Payne said it. And there is no evidence presented to you that he did not. The evidence, quote unquote, that has been presented to you, what Mr. Skaggs wants you to concentrate on is that Billy Payne lied about whether or not he's acted as an informant in other cases. What Mr. Skaggs wants you to talk about, uh, to think about is the inept job of the Franklin Police Department. Why is that? Why is that? Cause he don't want you to think about and remember that the only evidence in this case is that Billy Payne bought two pieces of rock cocaine from John Weaver for $30. The uncontroverted facts of this case. Undisputed.

There was no contemporaneous objection to this statement. Instead, after the argument was concluded and the jury had recessed, defense counsel moved for a mistrial

based upon the prosecutor's repeated references to the uncontradicted evidence of the cocaine buy. The motion was overruled.

 In the first place, this issue is not properly preserved. We held in *Sizemore v. Commonwealth*, Ky., 844 S.W.2d 397, 399 (1992) that an objection to improper statements made during closing arguments must be contemporaneous. *See also Sherley v. Commonwealth*, Ky., 889 S.W.2d 794, 799 (1994); *Houston v. Commonwealth*, Ky.App., 641 S.W.2d 42, 45 (1982). The trial court should be given the opportunity to consider whether an admonition would cure the error. *See Roberson v. Commonwealth*, Ky., 913 S.W.2d 310, 317 (1994). Regardless, the prosecutor's statements did not address themselves directly to Appellant's silence. The remarks address the Appellant's failure to refute Payne's testimony by any means. "A prosecutor may properly comment on the defendant's failure to introduce witnesses on a defensive matter." *Slaughter v. Commonwealth*, Ky., 744 S.W.2d 407, 413 (1987). The prosecutor's comments did not exceed the latitude normally allowed to counsel in closing argument. *Id.* at 412.

For these reasons, the judgment of the Simpson Circuit Court is affirmed.

STEPHENS, C.J., and GRAVES, JOHNSTONE, STUMBO and WINTERSHEIMER, JJ., concur.

LAMBERT, J., dissents by separate opinion.

LAMBERT, Justice, dissenting.

As shown in the majority opinion, the trial of this case was infected by a number of errors and flaws in the proceedings. The majority has held all such to be harmless error or unpreserved. While the idea that cumulative non-prejudicial error requires reversal is to be applied sparingly, I believe the threshold was met in this case. *Sanborn v. Commonwealth*, Ky., 754 S.W.2d 534 (1988). There are simply too many flaws to permit the conclusion that appellant received a fundamentally fair trial.