**Carrie GENTRY Petitioner**

v.

**Doris DEUTH, Warden Respondent**

**No. 5:03CV–15–J.**

United States District Court,
W.D. Kentucky,
At Paducah.

March 18, 2004.

616

Timothy G. Arnold, Department of Public Advocacy, Frankfort, KY, for Plaintiff.

William Larue Daniel, II, William Robert Long, Jr., Attorney General–Criminal Appellate Division, Frankfort, KY, for Defendant.

## *MEMORANDUM OPINION*

JOHNSTONE, Senior District Judge.

This habeas corpus case raises a constitutional challenge to the admission of expert witness testimony in a state criminal trial by way of two-way, closed circuit television. Petitioner alleges that she was denied her right to adequately confront five prosecution witnesses in violation of the Confrontation Clause of the Sixth Amendment. She now claims that, contrary to *Maryland v. Craig,* 497 U.S. 836, 848–50, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), no compelling state interest or public policy was offered by the Commonwealth of Kentucky to justify permitting its expert witnesses to testify electronically from a remote location. She also claims that the live, two-way television system was not adequate to ensure the reliability of the expert witness testimony admitted against her at trial.

This matter is now before the Court to consider petitioner's objections (DN 29) to the report and recommendation of the magistrate judge. (DN 28). The magistrate judge recommended that the motion of the respondent for summary judgment be granted, and that the petitioner's application for habeas corpus relief be dismissed. In his report, the magistrate judge rejected the petitioner's Confrontation Clause argument. According to the magistrate judge, the *Craig* decision, which involved a one-way video system, was distinguishable from the petitioner's case, in which the experts were permitted to testify via a live, *two*-way video conference system designed to permit the petitioner, counsel, judge and witness to view one another simultaneously. The magistrate judge also found that petitioner's case was "further distinguishable from *Craig,*" because the witnesses involved were expert witnesses less susceptible to the forces of eye-to-eye confrontation than the child fact-witness who testified in *Craig.*

For these reasons, the magistrate judge concluded that "[t]he respondent has per-

suasively shown that the concerns expressed in *Craig* do not apply herein." (DN 28, p. 4). This conclusion led the magistrate judge to ultimately determine that the decision of the Kentucky Court of Appeals that rejected petitioner's Confrontation Clause argument was not clearly contrary to, nor did it involve an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d).

The Court disagrees with this determination and the reasoning that resulted in it. The decision of the Kentucky Court of Appeals, to the extent that it relied upon federal law, if at all, was certainly an unreasonable application of *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), where the State in this case failed to offer any compelling reason at trial, and the trial court made no finding, to justify the use of the two-way video system to present its expert testimony in petitioner's case. The refusal of the Commonwealth's five expert witnesses to personally attend the trial, after the trial court entered orders of personal appearance, based apparently on only their own convenience and nothing more, failed to satisfy the type of compelling, state public policy required to fit within the "narrow exception" created by *Craig*. Petitioner's right to confrontation under the Sixth Amendment was violated as a result. Because the Sixth Amendment violation had no substantial and injurious effect on the verdict of the jury, however, the Court will grant the motion of the respondent for summary judgment, albeit for reasons other than those offered by the magistrate judge.

### Procedural History and Material Facts

The parties do not dispute the procedural history of the state court proceedings. In February of 1999, a grand jury seated in McCracken County, Kentucky, indicted petitioner, Carrie Gentry. (DN 10, Appx. 63). The indictment charged Gentry with one count of second-degree manslaughter, KRS 507.040, and one count of operating a motor vehicle while under the influence of alcohol, KRS 189A.010. Both charges arose from an automobile accident that occurred in McCracken County on January 29, 1999, and resulted in the death of Brian Pettit.

Trial was scheduled to begin in McCracken Circuit Court on April 17, 2000. Prior to trial, the prosecutor issued subpoenas to obtain the personal attendance of Larry Ayres, a DNA analyst employed by the Commonwealth of Kentucky in Frankfort, Kentucky, and Tracey Phillips, a trace analyst, also a state employee in Frankfort, Kentucky. (DN 17, Appx. 1–2). Both subpoenas were filed in McCracken Circuit Court in February, two months prior to the scheduled start of trial.

The prosecutor also filed the motions for the personal attendance of Dr. Tracy Corey Handy, the Chief Medical Examiner for the Commonwealth of Kentucky, located in Frankfort, and Dr. William Smock, a medical consultant to the Kentucky Medical Examiner's office specializing in automobile collision occupant rolls. (*Id.*, pp. 3, 7). Each motion for personal appearance was accompanied by an affidavit of the prosecutor which provided, in effect, that the testimony of the expert witness requested to personally attend was important to the trial and could not be obtained to a reasonable degree "without an oral examination of the doctor in the McCracken Circuit courtroom." (*Id.*, pp. 4, 8). The trial court granted both motions for personal attendance. (*Id.*, pp. 5, 9).

None of the expert witnesses whose presence was requested by the prosecution, and ordered by the trial court, personally appeared at trial. Instead, the prosecution expressed its intention at trial to present the live testimony of these four

witnesses, along with a serologist, Phil Wilson, of the Kentucky State Crime Laboratory in Madisonville, Kentucky, by way of a two-way, live video conferencing system installed in the McCracken Circuit courtroom as part of a model courtroom telecommunications program.

The video conferencing system in the courtroom consists of a closed circuit television connection that permits witnesses in other counties in Kentucky to testify remotely. At the remote site is a camera that permits persons in the courtroom to view the head and shoulders of the testifying witness. Cameras located in the courtroom at counsel table and the bench permit the witness to view individuals in those areas. A television screen in the courtroom displays the image from each of the four cameras simultaneously, dividing the television screen into four equal squares. A special camera, referred to as an ELMO, permits the witness and all persons in the courtroom to simultaneously view close-ups of courtroom exhibits. When the ELMO is in operation, however, only the exhibit may be seen on the television screen at either location.[1]

Before the first of these expert witnesses began to testify, counsel for the petitioner objected to the use of the video conference system on the ground that it violated her Sixth Amendment right to confrontation. (Tape No. 2, 4/17/00, 13:59:30). The prosecutor, in response to her objection, stated as follows, "Judge, you know, truthfully, if I could get these witnesses down here, but they've now been told that they don't have to come, so they immediately tell me, 'we're not coming.'" (*Id.*). Following this comment, the trial court overruled the petitioner's Confrontation Clause objection, while noting simply that the question of the legality of the two-way video conference system was presently being adjudicated in the Kentucky courts.[2]

At trial, the prosecution established that petitioner had joined friends at a local bar in McCracken County on the evening of the accident. While at the bar, she had met the deceased, Brian Pettit. Petitioner and Pettit were drinking alcohol. Petitioner maintains, however, that she only consumed two drinks after determining that she might have to be a designated driver later. At trial, petitioner offered several witnesses who testified that she did not appear to be intoxicated.

---

1. This description of the manner in which the two-way video conference system is intended to work is taken from the opinion on direct appeal in *Gentry v. Commonwealth*, Appeal No.2000–CA–001893–MR (Ky.App., rendered Dec. 7, 2001). Neither party disputes this description of the manner in which the system is intended to work under ideal circumstances. Petitioner does challenge the adequacy and reliability of the system as it was employed in her case.

2. While petitioner's case was pending on direct appeal, the Supreme Court of Kentucky, in March of 2001, rendered an opinion in *Commonwealth v. Ingram*, 46 S.W.3d 569 (Ky. 2001), holding that the use of an interactive video system in the Jefferson District Court to conduct an arraignment did not violate the due process rights of the defendants to be present at a critical stage of the criminal proceedings regardless of "the poor conditions of the holding area [in which the defendant appeared], a frequent inability to hear and communicate with defendants over the closed circuit system, the judge's inability to see the defendant's full body on the television monitor," and the frequent failure of a printer located in the holding area. *Id.*, at 571–72. In reaching this decision, the Kentucky Supreme Court cited several state court decisions, adding that, "[t]he trend among state and federal courts is to allow the property safeguarded use of video proceedings, provided there is no violation of some specific constitutional right." *Id.*, at 572. (citing *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990)).

After the bar closed, petitioner offered to let Pettit spend the night at her apartment after he determined that he had too much to drink. Petitioner then set out driving on U.S. 62 west in Paducah. At some point, her car crossed over the center line and hit a bridge embankment. Both petitioner and Pettit were ejected, with Pettit being killed at the scene of the accident. After petitioner regained consciousness, she obtained help and was taken to a local hospital where her blood serum alcohol level was measured at 0.14. Petitioner was arrested soon thereafter and charged with wanton murder. During the evening, she made a series of conflicting statements as to whether or not she was the driver or passenger in the automobile. At trial, she initially maintained that she was the passenger, but alternatively argued that if driving, she was not intoxicated.

To support her defense, petitioner attempted to offer the testimony of a serologist, Anne Rummel Manly. The prosecution objected to the admission of Manly's testimony on the ground that the petitioner had failed to comply with the reciprocal discovery order of the trial court. In accordance with RCr 7.24, the order required the petitioner to provide the state, not later than five days prior to trial, with any results or reports of physical or mental examinations or scientific tests or experiments performed by Manly that the petitioner intended to introduce at trial as evidence (Tape No. 4, 4/19/00, 9:38:45).

Petitioner argued that Manly had not written a report and had not performed any physical examinations or scientific tests. Accordingly, petitioner reasoned that she had nothing to provide the prosecution with prior to trial and had not violated the discovery order or RCr 7.24. The trial court disagreed and ruled that the failure of the blood chemistry expert to reduce her expert opinion to writing prior to trial violated the discovery order. The court excluded Manly from testifying. (*Id.*, 9:50:33). At the time of its ruling, the trial court had not heard the opinion of the expert.

The defense had Manly testify by avowal outside the presence of the jury. Her testimony was that blood alcohol levels ordinarily refer to the quantity of alcohol in the *whole* blood, and that when whole blood is reduced to serum, the serum will include all of the alcohol, but not all of the elements normally found in the whole blood. As a result, blood alcohol readings taken from serum are consequently higher than readings taken from whole blood. The two different readings can be equated mathematically, however, by multiplying the blood serum reading by 0.85, the conversion factor. (Tape No. 4, 4/19/00, 13:32:04–13:32:13). Manly then testified that the blood alcohol reading on the Commonwealth's report, a reading of 0.14, was a blood serum reading rather than a whole blood alcohol reading. Accordingly, such reading overstated the amount of alcohol in the petitioner's blood at the time of the test.

This avowal was taken during the deliberations of the jury. Following its deliberations, the jury returned a verdict of guilty of the charge of second-degree manslaughter and guilty of operating a motor vehicle with alcohol concentration above 0.10. (DN 17, Appx. 22–23). Petitioner made a motion for a judgment notwithstanding the verdict and a motion for a new trial. (DN 27, Appx. II, pp. 7–10). The trial court denied the petitioner's motions. (*Id.*, p. 13). On July 6, 2000, the trial court sentenced petitioner Gentry to a five-year term of imprisonment on count 1, the manslaughter count, and fifteen days of imprisonment on count 2, the DUI count, with

both sentences to be served concurrently. (DN 10, Appx. 60–61).

Petitioner took a direct appeal to the Kentucky Court of Appeals. On appeal, she argued first that her right to personal confrontation was violated when the prosecution's five expert witnesses were permitted to testify via closed circuit video conferencing. In her brief, the petitioner cited *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988) and *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). Petitioner also argued that her right to due process and to present a defense was violated when the trial court excluded the testimony of her expert blood chemist, Manly. (DN 10, Appx. 32–33). Finally, she argued that she was denied a fair trial when the prosecutor was permitted to argue to the jury that she changed her story midway through the trial. (*Id.*).

After the Commonwealth filed its appellate brief (DN 10, Appx. 19,30), the Court of Appeals entered an opinion on December 7, 2001, affirming petitioner Gentry's conviction. (DN 1, Appx., *Gentry v. Commonwealth*, Case No.2000–CA–001893–MR (Ky.App.2001)). The Court of Appeals rejected the petitioner's Confrontation Clause argument without discussing *Green*, *McCoy* or *Craig*. (DN 1, Appx., *Gentry v. Commonwealth*, *supra*). On this issue, the Court wrote only as follows:

On appeal, Gentry continues to argue that this decision [to permit expert testimony by two-way video conference] violated her right to confront the witnesses against her pursuant to the Sixth Amendment to the United States Constitution. This issue was addressed recently in *Bolen v. Commonwealth*, 31 S.W.3d 907 (2000), a case in which the

Kentucky Supreme Court found this argument to be without merit.

(*Id.*, p. 4).

The Court of Appeals also rejected petitioner's argument concerning her expert witness Manly. The Court of Appeals held that under RCr 7.24, as interpreted by the Kentucky Supreme Court in *Barnett v. Commonwealth*, 763 S.W.2d 119 (1988), the prosecutor was entitled to learn Manly's opinion—that the blood serum test overstates the blood alcohol content—prior to trial. (DN 1, Appx., pp. 4–7). Accordingly, the Court of Appeals held that the trial court properly rejected Manly's testimony due to the failure of the petitioner to comply with the reciprocal discovery order and RCr 7.24. Finally, the Court of Appeals held that the prosecutor's statements concerning the petitioner changing her story midway through the trial were fair comment on the evidence. (*Id.*, pp. 8–9).

Petitioner filed a motion for discretionary review of the Court of Appeals' opinion. The Supreme Court denied her motion by order entered on June 5, 2002. (DN 1, Appx., *Gentry v. Commonwealth*, 2002–SC–17–9 (Ky.2002)). Petitioner then filed her current petition for federal habeas relief on January 23, 2003. (DN 1).

### LEGAL ANALYSIS

 A state prisoner who maintains that she is custody in violation of the Constitution of the United States may seek release in federal court by filing an application for a writ of habeas corpus. Section 2254 of Title 28 of the United States Code, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in subsection (d) as follows:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the

merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2) (2003). A state court adjudication will be considered "contrary to" the precedent of the Supreme Court "if the State court arrives at a conclusion opposite to that reached by the [Supreme] Court on a question of law or if the State court decides a case differently than this [Supreme] Court has on a set of material and distinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). *See also Bell v. Cone*, 535 U.S. 685, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). An adjudication of a state court will be considered an "unreasonable application" of a Supreme Court precedent "if the State court identifies the correct governing legal principle from this [Supreme] Court's decisions but unreasonably applies the principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413, 120 S.Ct. 1495. An unreasonable application requires the reviewing court to determine whether the State court's application of clearly established federal law was objectively unreasonable. *Id.* at 409, 120 S.Ct. 1495. An application of federal law by a state court that is merely incorrect or erroneous, but yet objectively reasonable, will not warrant habeas corpus relief. *Id.* at 412, 120 S.Ct. 1495.

### Confrontation Clause

The first task for the Court is to determine whether the Kentucky Court of Appeals applied the clearly established precedent of the United States Supreme Court in a contrary or unreasonable fashion. This task is not as simple to perform as it is to state. The final state court opinion to address the Confrontation Clause on the merits is the unpublished opinion of the Kentucky Court of Appeals rendered on December 7, 2001.

The Court of Appeals did not dedicate an extensive discussion to this constitutional issue. Although the opinion does characterize the issue as a Confrontation Clause question arising under the Sixth Amendment to the United States Constitution, the entire opinion devotes merely a single sentence to the matter. As noted, the Court wrote merely that, "This issue was addressed recently in *Bolen v. Commonwealth*, Ky., 31 S.W.3d 907 (2000), a case in which the Kentucky Supreme Court found this argument to be without merit." (DN 1, Appx., *Gentry v. Commonwealth*, Appeal No.2000–CA–001893–MR, at p. 4). The Court of Appeals concluded its analysis of the issue with this single statement.

Examination of the cited *Bolen* decision reveals the following passage, which constitutes the sole mention of the Confrontation Clause issue. The Supreme Court of Kentucky wrote that:

Bolen makes three additional claims of error: (1) whether expert testimony via closed circuit television violates the Confrontation Clause; (2) whether there was prosecutorial misconduct during voir dire; and (3) whether his convictions for both possession of drug paraphernalia and possession of a controlled substance violated the constitutional prohibition against double jeopardy. All three of these issues are unpreserved.

We have carefully reviewed these and conclude that each one is without merit and none deserve to be discussed further.

*Bolen*, 31 S.W.3d at 910. Thus, the *Bolen* decision contains no substantive discussion of the precedent of the United States Supreme Court. The decision, as petitioner points out, may well have been resolved under the "palpable error" standard of RCr 7.26, which provides that unpreserved errors will only be examined on appeal to determine if palpable error has occurred. *See Commonwealth v. Petrey*, 945 S.W.2d 417, 419 (Ky.1997).

Neither *Bolen*, nor the Kentucky Court of Appeals in petitioner Gentry's case, offers any citation to, much less discussion of, the *Craig* or *Coy* decisions. We do not know why the Confrontation Clause arguments of the petitioner, or the defendant in *Bolen*, were "without merit." Certainly, the issues were identified as being Sixth Amendment Confrontation Clause issues. Why the issues were rejected is a mystery.

For our purposes, we will assume that the Kentucky Supreme Court and the Kentucky Court of Appeals were aware of and applied the controlling Supreme Court precedent on Confrontation Clause issues. The most recent precedent from the United States Supreme Court is the decision of *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).

In *Craig*, a Maryland defendant was prosecuted for her alleged sexual abuse of a six-year-old child. Prior to trial, the State requested permission for the young victim to testify by a one-way, closed circuit television system which permitted the defendant to view the questioning of the child by the prosecutor and the defense attorney in a separate room from the courtroom.

The system did not permit the child to see the defendant. The defendant, however, could remain in constant communication with his counsel, and objections could be ruled on as if the witness were in the courtroom. The State maintained that this one-way, closed circuit television system was necessary because the young witness would suffer serious emotional distress if required to testify in open court. Based on an expert opinion to this effect, offered prior to trial, the Maryland court permitted the child victim to testify using the one-way video system over the objection of the defendant that his right to direct confrontation was violated.

Following conviction, the defendant appealed first to the Maryland Court of Special Appeals which affirmed his conviction. The Maryland Court of Appeals, however, on further appeal, reversed the conviction, finding that the State had failed to satisfy the constitutional standard of *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). The State Court of Appeals held that such a video system could not be used unless the child victim was initially questioned in the presence of the defendant, and the trial court determined that the child's severe emotional distress prevented his or her testimony other than by a two-way television system, rather than a one-way system.

On certiorari review, the Supreme Court of the United States rejected the reasoning of the Maryland Court of Appeals. In so doing, the Court explained that:

> We have never held, however, that the Confrontation Clause guarantees criminal defendants the *absolute* right to a face-to-face meeting with witnesses against them at trial. Indeed, in *Coy v. Iowa*, we expressly "left for another day ... the question of whether any exceptions exist" to the irreducible literal meaning of the Clause: "a right to *meet*

*face-to-face* all those who appear and give evidence *at trial."*

*Craig,* 497 U.S. at 844, 110 S.Ct. 3157.

The Supreme Court continued that, "Although face-to-face confrontation forms 'the core of the values furthered by the Confrontation Clause,' *Green,* 399 U.S. at 157, 90 S.Ct. 1930, we have nevertheless recognized that it is not the *sine qua non* of the confrontation right." *Id.* at 847. The Supreme Court pointed out, as an example, that, when necessary, the admission of hearsay statements against a defendant in a criminal trial has been permitted. *Id.* at 848 (citing *Pointer v. Texas,* 380 U.S. 400, 404, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) and *Mattox v. United States,* 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895)). Accordingly, the Court reasoned that the preference for direct confrontation must occasionally "give way to considerations of public policy and the necessities of the case." *Id.*

The Court reasoned in *Craig* that, "In narrow circumstances, 'competing interests, if closely examined, may warrant dispensing with confrontation at trial.'" *Id.* at 848, 110 S.Ct. 3157 (citing *Ohio v. Roberts,* 448 U.S. 56, 63–64, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)). The Court immediately cautioned, however:

> That the face-to-face confrontation requirement is not absolute does not, of course, mean that it may easily be dispensed with. As we suggested in *Coy,* our precedents confirm that a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured.

*Id.* at 850, 110 S.Ct. 3157 (citing 487 U.S. at 1021, 108 S.Ct. 2798).

The Supreme Court emphasized that the "critical inquiry" in a case such as *Craig* "is whether use of the procedure is necessary to further an important state interest." *Id.* at 852, 110 S.Ct. 3157. It found that the procedure used in the child abuse prosecution in Maryland preserved all of the core values of the Confrontation Clause—testimony under oath, opportunity for contemporaneous cross-examination, and observation of the witness.

The Supreme Court observed that, "The presence of these other elements of confrontation—oath, cross-examination and observation of the witness' demeanor—adequately ensures that the testimony is both reliable and subject to vigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony." *Id.* at 851, 110 S.Ct. 3157. Because the testimony in *Craig* was both reliable and subject to vigorous adversarial testing, and because the State had proven to the trial court an important public policy of protecting minor victims of sex crimes from further trauma and embarrassment, the Court upheld Craig's conviction.

The *Craig* decision, however, added a final cautionary note concerning the type of public policy showing required to justify such a video conferencing system: "The requisite finding of necessity must, of course, be a case-specific one: the trial court must hear evidence and determine whether use of the one-way closed circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify." *Id.* at 855, 110 S.Ct. 3157.

■ The *Craig* decision was clearly established precedent of the United States Supreme Court at the time of petitioner Gentry's conviction a decade later in April of 2000. *Craig* creates a framework in

which the state may justify the use of video conferencing to admit the testimony of a witness in a criminal trial without violating the constitutional preference for direct confrontation. The state must, prior to trial, make a case-specific, evidentiary showing that the use of a two-way video conferencing system is required to further an important public policy, such as in *Craig*, where the public policy was to protect the welfare of the child witness. *Id.* at 855–56, 110 S.Ct. 3157. The trial court must hear this evidence and make a specific findings, in the context of the case, that use of the closed circuit television system is required to further the important public purpose offered by the state. *Id.*

■ Here, in the petitioner's case, the Commonwealth made no case-specific showing that an important state interest or public policy required its expert witnesses testify via two-way, closed circuit television. In fact, the prosecutor, as agent of the Commonwealth, desired to have the witnesses personally attend the trial. Subpoenas were issued for two of the witnesses and orders of personal appearances for the remainder. The witnesses simply refused to make the 250–mile drive to Paducah, Kentucky, to appear at trial, apparently, because they had been told by unnamed persons that they did not have to do so in light of the judicial video conferencing system in the courtroom. The court made no attempt to conduct an evidentiary hearing, nor did it make any specific findings regarding the situation. At most, it simply offered that the legality of the two-way, closed circuit television system was being litigated in the state courts.

These circumstances do not remotely approach the requirements announced in the *Craig* decision to justify use of the "narrow exception" to the preference for direct confrontation. To the extent that the decision in petitioner Gentry's direct appeal can be interpreted, by its citation to *Bolen v. Commonwealth*, 31 S.W.3d 907 (Ky.2000), to rely on the precedent of the United States Supreme Court,[3] the Court of Appeals decision was clearly unreasonable in its treatment of the Confrontation Clause issue in Gentry's direct appeal.

Upholding the use of the two-way, closed circuit video conference procedure under the present circumstances would gut the essential requirement that the state make a fact-specific showing of necessity. It would also remove the requirement that the trial court consider the issue and make specific findings prior to permitting such a system to be used to take testimony remotely. Defendants would, as a result, forfeit their Confrontation Clause protection without any substantial justification by the state. Something more than a generalized notion of convenience, merely an implicit one at that, must be shown before the preference for direct confrontation can be overcome. To the extent that the Court of Appeals opinion appears to hold otherwise, it is an objectively unreasonable application of the clearly established Supreme Court precedent announced in *Craig*.

The attempt of the Commonwealth to side-step *Craig* by reliance on *United States v. Gigante*, 166 F.3d 75, 80–81 (2d Cir.1999) is unavailing. First, the *Gigante*

---

**3.** Again, neither Gentry's direct appeal opinion, nor the *Bolen* decision, make any specific reference to a particular case or cases announced by the United States Supreme Court. At most, *Bolen* simply declares the use of remote testimony in that particular case to be constitutional. We have assumed, for the purpose of analysis, that the state courts are aware of and interpreted *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990) and its predecessor *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988).

decision is not the clearly established precedent of the United States Supreme Court. As such, the federal courts may not rely on it to brush aside what is clearly established Supreme Court precedent. *See Harris v. Stovall,* 212 F.3d 940, 944 (6th Cir.2000) (error for federal habeas court to rely on a lower federal court decision to grant habeas corpus relief where only the clearly established precedent of the Supreme Court should be considered); *Mitzel v. Tate,* 267 F.3d 524, 530–31 (2001) (same). Thus, this Court cannot rely solely on the decision of a lower federal court when determining whether a state court has acted in an objectively unreasonable fashion in rendering its decision. *Id.*

Second, and just as importantly, the *Gigante* decision is not persuasive to the extent that it relies on the two-way nature of a closed circuit video conference system, as opposed to the one-way nature of the conferencing system in *Craig,* as the sole basis on which to set aside the standard announced in *Craig.* Regardless of whether the video conferencing system is one-way or two-way, the *Craig* standard remains in place. The only significance of the distinction between the two systems is that the two-way system is more reliable in preserving the core values of the Confrontation Clause, not that it avoids the Confrontation Clause analysis of *Craig* altogether.

Justice Scalia recently made this exact point in a communication from the United States Supreme Court on April 29, 2002, to the Speaker of the House of Representatives. Court Rules 207 FRD 89, 93–96 (2002). The Supreme Court of the United States was then transmitting to the United States Congress the Amendments to the Federal Rules of Criminal Procedure to take effect on December 1, 2002. 207 F.R.D. at 92. The Supreme Court declined to accept the proposal of the Judicial Conference of the United States to amend Federal Rule of Criminal Procedure 26(b) to authorize two-way video transmissions in criminal cases in exceptionable circumstances with appropriate safeguards if the witness was unavailable.[4]

A majority of the Justices of the United States Supreme Court refused to send this proposed Rule to Congress. Justice Scalia filed a statement explaining why the majority of the Court did not approve the addition of the proposed Rule 26(b) as recommended by the Judicial Conference. In his statement, Justice Scalia wrote as follows:

> In *Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), the Court held that a defendant can be denied face-to-face confrontation during live testimony at trial only if doing so is "necessary to further an important public policy," and only "where there is a case-specific finding of [such] necessity." *Id.* at 857–58, 110 S.Ct. 3157. The Court allowed the witness in that case to testify via one-way video transmission because doing so had been found "necessary to protect a child witness from trauma." *Id.* at 857, 110 S.Ct. 3157. The present proposal does not limit the use of testimony via video transmission to instances where there has been a "case-specific finding" that is "necessary to further an important public policy." To the contrary, it allows the use of

---

4. The language of the proposed Rule read that, in the interest of justice, the Court may authorized contemporaneous two-way video presentation in open court of testimony from a witness who is at a different location if: (1) the requesting party establishes exceptional circumstances for such transmission; (2) appropriate safeguards for the transmission are used; and (3) the witness is unavailable within the meaning of Federal Rule of Evidence 804(a)(4)-(5). *Id.* at 99 (Appx. to Statement of Justice Breyer).

video transmission whenever the parties are merely unable to take a deposition under Fed.R.Crim.P. 15. Indeed, even this showing is not necessary: The Committee says that video transmission may be used generally as an alternative to depositions. This is unquestionably contrary to the Rule enunciated in *Craig*. The Committee reasoned, however, that "the use of a two-way transmission made it unnecessary to apply the *Craig* standard." Advisory Committee's notes to Fed.R.Crim.P. 26, pp. 54–55 (citing *United States v. Gigante*, 166 F.3d 75, 81 (2d Cir.1999) ... *cert. denied*, 528 U.S. 1114, 120 S.Ct. 931, 145 L.Ed.2d 811 (2000)). I cannot comprehend how one-way transmission (which *Craig* says does not ordinarily satisfy confrontation requirements) becomes transformed into full-fledged confrontation when reciprocal transmission is added. As we made clear in *Craig, supra*, at 846–47, 110 S.Ct. 3157, a purpose of the Confrontation Clause is ordinarily to compel accusers to make their accusations in the defendant's presence—which is not the equivalent of making them in a room that contains a television set beaming electrons that portray the defendant's image. Virtual confrontation might be sufficient to protect virtual constitutional rights; I doubt whether it is sufficient to protect real ones.

207 F.R.D. at 93–94 (some citations omitted).

As can be seen, the Judicial Conference of the United States attempted to promulgate an amendment to Federal Rule of Criminal Procedure 26(b) without requiring a case-specific showing under the *Craig* decision. The Conference attempted to do so by relying on the *Gigante* decision of the Second Circuit now cited by the Commonwealth and the magistrate judge. Justice Scalia rejected the reasoning of *Gigante* as a means for distinguishing the requirements of *Craig*.

While Justice Scalia's comments to Congress are certainly not binding judicial precedent, it is undeniable that he wrote for a majority of the Court, thus indicating, at least informally, its view on the matter. As a result, this Court would be unwise to follow the same path as the Judicial Conference and attempt to cling to *Gigante* with the hope that the strict requirements of *Craig* can be avoided. They cannot. To the extent that the Kentucky Court of Appeals appears to have held otherwise, at least tacitly, the decision of the Court of Appeals on the Confrontation Clause issue is an objectively unreasonable application of the Confrontation Clause standard announced in *Craig*.

The Sixth Amendment right of petitioner Gentry to direct confrontation was violated when the trial court permitted the use of the two-way, closed circuit system to permit the Commonwealth's five experts to testify without holding a prior evidentiary hearing at which the state would make a fact-specific showing that an important public policy justified the admission of the remote testimony via two-way, closed circuit television.

■ The only question now is whether this constitutional error was a harmful one. A constitutional error that does not have a "substantial and injurious effect or influence in determining the jury's verdict" will not justify habeas corpus relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637–38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). Such errors will be considered to be harmless. The Sixth Circuit has applied the *Brecht* harmless error standard to several Confrontation Clause issues in the context of habeas corpus cases. *See Gilliam v. Mitchell*, 179 F.3d 990, 994–95 (6th Cir. 1999); *Norris v. Schotten*, 146 F.3d 314, 330 (6th Cir.1998).

■ Application of the *Brecht* standard reveals that admission of the expert testimony via two-way, closed video conference did not have a harmful or injurious effect on the fundamental fairness of petitioner Gentry's trial. The expert witnesses offered the type of quantitative, scientific-based testimony that would not have varied merely because they were present in the courtroom. Moral suasion will do little to change a blood alcohol level from 0.14 to any other reading. The same is true of testimony concerning DNA identification, occupant roles in the vehicle, or trace identification of clothing fibers. These matters are not the type of fact testimony that can be shaken merely because the expert witness is physically present in the courtroom, rather than testifying remotely by two-way, closed circuit television. Accordingly, while the reasoning of the Court differs substantially from that of the magistrate judge, the end result with regard to the Confrontation Clause issue is the same. Gentry is not entitled to relief on this issue.[5]

### Exclusion of Chemist Manly's Testimony

The petitioner's second issue involves the decision of the trial court to exclude the expert testimony of blood chemist, Anne Rummel Manly. As noted, the trial court refused to permit the defense to question Manly after the prosecutor objected at trial that the defense had failed to disclose her identity and expert opinion prior to the start of trial. The prosecutor persuaded the trial court that its reciprocal discovery order, which parroted the language of RCr 7.24, required the defense to

make such a disclosure. Petitioner Gentry argued that since Manly had not prepared a written report and had not performed any physical examinations or scientific tests or experiments, there was nothing to be disclosed prior to trial. (Tape No. 4, 4/19/00, 9:38:45–9:42:50). While Manly was permitted to testify by avowal, the jury was not permitted to hear her opinion that the blood serum alcohol level of 0.14 overstated Gentry's blood alcohol reading, which should have been multiplied by 0.85 to obtain a more accurate reading. (*Id.*, 13:32:04–13:52:58).

The magistrate judge concluded in his recommendation that the decision of the Kentucky Court of Appeals essentially was a ruling on state evidentiary law that "[t]his court is not in the position to second-guess . . ." (DN 28, p. 5). The magistrate judge continued to conclude that Gentry's trial was not rendered fundamentally unfair due to the exclusion of Manly's expert testimony since, even using Manly's multiplication factor, Gentry's blood alcohol level would only be reduced to 0.119, an amount which is still above the legal limit of 0.10 in Kentucky as provided by KRS 189A.010(1)(8).

■ Once again, the Court reaches the same conclusion as the magistrate judge, albeit for slightly different reasons. In this instance, the Court believes that a serious question exists as to whether Gentry fully and fairly presented her due process claim at all levels of the state court system. It appears that she raised the argument primarily as one of state law involving RCr 7.24. Her brief on direct appeal to the Kentucky Court of Appeals,

---

**5.** Gentry attempts to challenge the reliability of the video system, arguing that the picture was grainy, the sound difficult to hear at times, and the camera at defense table not always focused on the defendant. The Court has viewed the videotape of the closed circuit testimony in its entirety. The tape reveals that the picture and audio quality of the system were more than adequate for all involved to clearly communicate to one another and be seen by the jury and each other.

however, does cite to *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) in reference to the due process right to present a defense. (DN 10, Appx. 55). This single reference, although somewhat isolated, is sufficient to ensure a full and fair presentation of her constitutional argument to the Kentucky Court of Appeals.

Gentry's motion for discretionary review, however, is a different matter. Nowhere in the section of the motion related to this issue is there any significant discussion of the matter as a federal constitutional issue. Indeed, Gentry characterizes the issue as whether the Kentucky Supreme Court "should accept discretionary review to determine the proper reach of the reciprocal discovery orders under RCr 7.24, as well as the proper remedy for their violation." (DN 17, Appx. 1, p. 36). Gentry then proceeds to cite a series of Kentucky court decisions that interpret State Rule of Criminal Procedure, RCr 7.24. *See Vires v. Commonwealth*, 989 S.W.2d 946 (Ky. 1999); *Weaver v. Commonwealth*, 955 S.W.2d 722 (Ky.1997); *Barnett v. Commonwealth*, 763 S.W.2d 119 (Ky.1988); *King v. Venters*, 596 S.W.2d 721 (Ky.1980); *Commonwealth v. Barber*, 643 S.W.2d 592 (Ky.App.1982).

After an extended discussion of Kentucky law, petitioner Gentry simply concludes the argument with a general citation to United States Constitutional Amendments 5, 6 and 14. That citation is the only reference to the Federal Constitution. Other than this fleeting reference, the only state court decision to make any mention of the Federal Constitution in its analysis is *Weaver*, 955 S.W.2d at 725–26, wherein the decision cites three United States Supreme Court decisions for the proposition that "a discovery violation justifies setting aside a conviction 'only where there exists a reasonable probably that

had the evidence been disclosed, the result at trial would have been different.'" *Id.* (citing *Wood v. Bartholomew*, 516 U.S. 1, 116 S.Ct. 7, 133 L.Ed.2d 1 (1995)).

While the nature of Gentry's argument in her motion for discretionary review as being a federal or state claim is open to debate, the Court concludes that her motion is sufficient, though marginally, to satisfy the full and fair presentation aspect of the total exhaustion rule. *See Baldwin v. Reese*, 541 U.S. 27, 31, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004) ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition ... by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.1993) (exhaustion requires that prisoner fairly present substance of each federal constitutional claim to the state courts using citations to the United States Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns).

Unless petitioner Gentry can demonstrate that the decision to exclude the testimony of expert Manly was so egregious that she was denied a fundamentally fair trial, she will not be entitled to federal habeas corpus relief. *See Clemmons v. Sowders*, 34 F.3d 352, 357–58 (6th Cir. 1994). Evidence that would ordinarily be considered to implicate a defendant's fundamental due process rights would be such evidence that is critical to the case and tended to exculpate the accused. *Turpin v. Kassulke*, 26 F.3d 1392, 1396 (6th Cir. 1994), *cert. denied*, 513 U.S. 1118, 115 S.Ct. 916, 130 L.Ed.2d 797 (1995). *See gen. Chambers v. Mississippi*, 410 U.S. 284, 297, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

■ Here, the refusal of the trial court to permit Manly to testify did not deny Gentry a fundamentally fair trial. Manly's testimony would not have exculpated Gentry. The magistrate judge correctly points out that the testimony of the expert concerning the proper methods to calculate blood alcohol level from a blood serum sample would have, at best, merely reduced Gentry's blood alcohol level reading to 0.119. This amount is still well above the then existing limit for intoxication in Kentucky of 0.10. Accordingly, to the extent that petitioner Gentry does state a federal due process claim, her constitutional claim does not entitle her to relief here.

■ The Court will not examine the ruling of the Kentucky Court of Appeals interpreting Kentucky's own RCr 7.24 requirements. This ruling of state law is binding on the federal courts. *See Wainwright v. Goode,* 464 U.S. 78, 84, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983). *See also Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("Today, we re-emphasize that it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."). The Court of Appeals determined that Gentry had violated RCr 7.24 by failing to disclose the premise of Manly's testimony prior to trial. This ruling is purely a matter of state law, and as such, it is not subject to re-examination here.

Finally, the Court pauses to revisit its prior order that the Commonwealth transcribe the videotaped trial court proceedings from April 17, 2000, through April 19, 2000. Gentry had requested that the Commonwealth provide such a transcript (DN 14), and moved to expand the record (DN 18). *See* Rules 5 and 7 of the Rules Governing § 2254 Cases. The magistrate judge had denied the motions to expand the record based on his finding that, "A review of the petition and of the state court record which has been filed with the Clerk indicates that there are no material facts which may not be resolved by the record and no expansion of the record as contemplated by Rule 7 is necessary." (DN 19, p. 2).

Gentry objected to the order, and this Court directed the Commonwealth to tender a written transcript of the requested portions of the videotaped recorded trial within thirty days. (DN 24, p. 2). While the Commonwealth did provide the videotapes of the expert witness testimony received via two-way, closed circuit television, the Commonwealth did not provide the transcription. (DN 27). The magistrate judge entered his report and recommendation without awaiting the production of a transcript, once again, finding that "[t]he material facts may be gleaned from the evidence presently before the Court...." (DN 28, p. 2).

After further consideration of the record, the arguments of the parties, and the videotape of the expert witness' testimony, the Court is in agreement that transcription of the remaining portions of the trial is not essential. The arguments of petitioner Gentry do not require that a full transcript of the trial be provided in order for the Court to adequately address and resolve matters before the Court. Accordingly, the Court rescinds that portion of its prior order that requires the Commonwealth to produce a written transcript of Gentry's trial. No benefit would be served by compelling such an expensive, time-consuming task on the respondent, where the petitioner's arguments and rights can be fully protected with the record presently before the Court. *United States v. MacCollom,* 426 U.S. 317, 324–25, 96 S.Ct. 2086, 48 L.Ed.2d 666 (1976) (Constitution does not require that transcript be provided indigent federal defendant involved in collaterally attacking a judgment of convic-

tion where court finds that transcript is not needed to resolve issue presented); *Ruark v. Gunter,* 958 F.2d 318 (10th Cir. 1992) (applying *MacCollom* to § 2254 petitioner's case).

For these reasons, the Court adopts the recommendation of the magistrate judge for the reasons set forth in this memorandum opinion. A separate judgment granting the motion of the respondent for summary judgment and denying the cross motion of the petitioner for summary judgment shall be entered.

A certificate of appealability pursuant to 28 U.S.C. § 2253(c) shall be granted on the question of whether petitioner's right to confrontation under the Sixth Amendment was violated by the use of remote testimony of the five expert witnesses for the prosecution who testified via two-way, closed circuit television during petitioner's trial. The Court concludes that reasonable jurors could debate the manner in which this claim has been resolved sufficiently to deserve encouragement to proceed further. *Miller–El v. Cockrell,* 537 U.S. 322, 336–37, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); *Slack v. McDaniel,* 529 U.S. 473, 483–84, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

### *JUDGMENT*

Pursuant to a separate Memorandum Opinion having been entered this date:

**IT IS ORDERED AND ADJUDGED** that:

1) The motion of the respondent for summary judgment be, and it is, hereby **GRANTED;**

2) The motion of the petitioner for summary judgment be, and it is, hereby **DENIED.** The petition for writ of habeas corpus filed by petitioner Gentry is **DISMISSED WITH PREJUDICE.**

This is a final judgment, and there is no just cause for delay.