# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: FEBRUARY 22, 2007
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2005-SC-000723-MR

FINAL

DATE 3-15-07 _Ellet Grouth P.C._

ANTHONY WARREN                                      APPELLANT

V.              APPEAL FROM JEFFERSON CIRCUIT COURT
             HONORABLE JUDITH E. MCDONALD-BURKMAN, JUDGE
             NOS. 03-CR-01687 AND 04-CR-01637

COMMONWEALTH OF KENTUCKY                        APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Appellant Anthony Warren appeals his conviction in the Jefferson Circuit Court following a jury trial for robbery in the first degree, unlawful imprisonment in the first degree, wanton endangerment in the first degree, and being a persistent felony offender in the second degree. The charges in this case arose out of an incident at the Park Hill neighborhood in Louisville. Everett Hunter was a former resident of the Park Hill project and knew people who lived there. Hunter was known in the neighborhood for buying cars and selling them after fixing them up. He was visiting Park Hill on March 19, 2003, in order to buy a car from Terrence Camp. He purchased a Buick from Camp for $400. Camp, appellant, and some others from the neighborhood were gambling in a dice game. Hunter decided he did not want to gamble and also did not want to reveal to the players that he was carrying a wad of money at that time. Hunter left the

neighborhood, but the Buick he bought remained in the parking lot at Park Hill.

Later that day, Hunter drove his Cadillac into the lot. He began to work on the stereo in the Cadillac, and decided to take wires for it out of the Buick. He was speaking with Terrence Camp as he leaned into the car. Suddenly, he noticed that Camp had stopped talking. Hunter looked up and saw two people outside the car. They were wearing "hoodies," or hooded sweatshirts, with the hoods pulled over their faces. One was standing near the car door; the second person was standing toward the back of the car.

The man nearest Hunter pointed a handgun at him and demanded his money. When Hunter didn't respond, the man repeated the demand for his money and also demanded the keys to the car. Arthur Coleman showed up to help Hunter. Hunter, conscious of the weapon, told Coleman that it was okay, that he would give them his money and for Coleman not to try to fight them. The gunman told Coleman to lie down on the ground. Hunter gave his money to the man with the gun. The man told him to get into his trunk. Hunter resisted, but the man said that he was serious. Hunter got into the trunk of the Buick and the man demanded the keys to Hunter's Cadillac. The robber's knowledge that both were his cars made Hunter believe that he was set up by someone in the neighborhood. The man closed the trunk on Hunter. The robbers fled.

Others in the neighborhood who had observed the incident called the police, but although they were patrolling the neighborhood, the police did not stop until it was over. Meanwhile, those in the neighborhood tried to get Hunter out of the trunk by prying it open. Eventually the fire department was called. The fire department could not open the trunk, but they passed Hunter bolt cutters through the bent trunk lid, which he used to release himself from the trunk. At the scene, Hunter told Detective Keeling of the

Louisville Metro Police Department that he had seen the person who robbed him. He told Detective Keeling that he knew him from the Park Hill neighborhood and that it was someone who he knew hung out at the liquor store. He said if the detective gave him a few days he would be able to come up with the perpetrator's name. Five days later, Hunter called Detective Keeling and told him he had learned the gunman's name was Anthony Warren. The detective put together a photo pack of pictures of six men similar in description to Anthony Warren and showed the photo pack to Hunter. Hunter identified Warren in a matter of seconds as the person who robbed him. The second person who participated in the robbery was never identified.

Harold Miller was at Park Hill that day visiting Hunter's brother. He testified at trial that he observed Hunter and Arthur Coleman just as they were about to be robbed. He saw that they had their hands in the air and heard Hunter tell Coleman to do what the robbers told them to do. He saw Coleman move to the ground. Then the gunman pointed the gun toward Miller. Miller said he moved around the side of a building. He saw a police car go by without stopping. Miller called the police on his cell phone. At trial, he identified the person with the gun as appellant, Anthony Warren.

Warren was indicted for robbery in the first degree and unlawful imprisonment in the first degree as to Everett Hunter, and for wanton endangerment in the first degree as to Arthur Coleman. Warren was subsequently indicted for being a persistent felony offender in the second degree. Appellant was tried on May 17-19, 2005. The jury found appellant guilty of the charged offenses. He was sentenced to a total of sixty-five years imprisonment.

Appellant's first claim of error is that the trial court violated his right to a speedy trial given the time that it took to try him on the charges in this case. Appellant filed a

pro se motion for speedy trial under the Sixth and Fourteenth Amendments to the United States Constitution.[1] The Court gave notice to the Commonwealth Attorney and the Office of the Public Defender that appellant had filed the motion. The court gave the Commonwealth a deadline within which to file a response if it intended to do so, after which it would issue its ruling. The Commonwealth chose not to respond to the motion, which was denied by the trial court on the morning of trial.

Initially, the Commonwealth challenges whether the motion to dismiss should even be considered on appeal, since the motion was filed pro se and appellant was represented by counsel in the trial court.[2] However, the Commonwealth made no objection below to the fact that the motion was pro se. Because the trial court decided to rule on it, we will review the propriety of the denial of the motion.

Either a formal indictment or information, or else the actual restraints imposed by arrest and holding to answer a criminal charge, engages the protections of the speedy trial provision of the Sixth Amendment. Dillingham v. United States, 423 U.S. 64, 65, 96 S. Ct. 303, 304, 46 L. Ed. 2d 205, (1975). According to the record, appellant was arrested on April 24, 2003, indicted on July 2, 2003, and arraigned July 15, 2003. The court held a pre-trial hearing on August 25, 2003, at which it was determined that discovery had not been completed. A pre-trial conference was held on October 23, 2003. At this time a trial date of January 17, 2004, was noted by the trial court. On

---

[1] Appellant asserted below and on appeal that his motion was not based on KRS 500.110, which provides a 180-day statutory deadline for trial for a person lodged pursuant to a detainer who makes a request for disposition of the charges. Appellant notes that there was not a detainer in this case, but according to the Department of Corrections a "hold" was placed on appellant.

[2] A request to proceed pro se or with counsel in a limited fashion must be timely and unequivocal. Deno v. Commonwealth, 177 S.W.3d 753, 757-758 (Ky. 2005), citing Moore v. Commonwealth, 634 S.W.2d 426, 430 (Ky. 1982). Appellant was not properly acting pro se, since he never made any attempt to waive his right to counsel or limit counsel's role.

December 1, 2003, a suppression hearing was scheduled, but not held. As of that date, the motion to suppress had not been filed. The motion to suppress was filed on January 22, 2004. A hearing was held on that motion on April 22, 2004.

Trial was again scheduled to be held on May 19, 2004, but was continued because the prosecutor was not available because he was in trial in another division of circuit court. The record shows that a trial date was set for October 13, 2004. On the day of trial, the defendant requested a continuance due to the presence of three eyewitnesses unknown to the defendant. The prosecutor acknowledged that, due to oversight, the information had not been provided to defense counsel. Trial dates were set in January and February 2005, but trial did not take place then. Appellant's pro se motion for dismissal for lack of a speedy trial was filed February 14, 2005. Appellant was tried May 17-19, 2005.

Appellant argues the court should have held a hearing on the motion for a speedy trial,[3] and that this court should remand for a hearing or dismiss the indictment and vacate the judgment. The inquiry into the speedy trial right must be triggered by a presumptively prejudicial delay, and there is no bright line rule for determining what length of a delay serves to trigger the inquiry. Gabow v. Commonwealth, 34 S.W.3d 63, 70 (Ky. 2000). "Presumptive prejudice" simply marks the point at which courts deem the delay unreasonable enough to trigger the inquiry into the possible denial of the speedy trial right. Doggett v. United States, 505 U.S. 647, 652, 112 S. Ct. 2686, 2691, 120 L. Ed. 2d 520 n. 1 (1992). The denial of the right to a speedy trial is not determined according to a particular time period; whether the right has been violated must depend on the particular context of each case. McDonald v. Commonwealth, 569

_____

[3] Appellant did not ask for a hearing below on his motion.

S.W.2d 134, 136-37 (Ky. 1978). We think that because this was a relatively straightforward case, it does lend itself to a question why there was a two-year delay in bringing it to trial. Cf. Bratcher v. Commonwealth, 151 S.W.3d 332 (Ky. 2004) (eighteen month delay presumptively prejudicial). Therefore, finding presumptive prejudice under the facts of the case, we make the inquiry into whether appellant's speedy trial right was violated.

The four factors to be considered in resolving the issue of speedy trial are (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right to a speedy trial; and (4) prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972); McDonald, 569 S.W.2d at 134. The delay in bringing this case to trial was a little over two years from the date of arrest to the date of trial. The delay from the time of the motion to dismiss until trial, however, was three months. The record shows that in that first year after appellant's arrest, discovery was still being completed and a motion to suppress was at issue. Thus, appellant contributed to and acquiesced in the first year of delay. Thereafter, the record shows only two continuances being granted, one at the request of the Commonwealth due to a conflict in another division of circuit court. The second was at the request of appellant, but was necessitated by the negligence of the Commonwealth in preparing its discovery. Thus, that fact should be weighed against the government, although less heavily than would deliberate delay. Barker, 407 U.S. at 531, 92 S. Ct. at 2192. Appellant did not request a speedy trial until after this latter continuance was granted. In terms of prejudice, he argues that since his parole was revoked upon his arrest on the charges in this case, the pending charges adversely affected his chance to obtain parole. He did not show, however, that his witnesses were unavailable or his defense

-6-

was otherwise prejudiced by the delay in bringing him to trial.

We believe the record shows that appellant was not zealously pursuing a speedy trial. Appellant never filed a motion for a speedy trial, but only complained of the delay prior to his filing a motion to dismiss. This court has stated that a motion to dismiss for lack of speedy trial is not the same as a motion for a speedy trial since it does not unequivocally put the trial court on notice that the defendant demands one. McDonald, 569 S.W.2d at 137. Appellant has only shown that one delay was caused by the negligence of the Commonwealth, and appellant at least acquiesced in the continuance. Four months after that last continuance, appellant filed his motion to dismiss, and three months after that he was tried.

We do not think appellant has shown an unusual delay in bringing his case. In particular, we do not agree that he has shown actual prejudice. Appellant's parole was revoked by his arrest. Appellant's motion indicated that he had already received a two-year deferment from the Parole Board which was continuing at the time he filed his motion. This suggests that he was not even eligible for release on parole until after the trial was held in this case. There is nothing, however, to suggest that appellant would not have remained in prison if his trial had been held earlier. Moreover, the Commonwealth notes that appellant would likely have been subject to pretrial incarceration even if his parole had not been revoked. We conclude from reviewing the four Barker factors that appellant has not shown that his constitutional right to a speedy trial was violated or that he should have been granted a hearing on his motion to dismiss.

For his second allegation of error, appellant argues that testimony from the lead detective in this case was irrelevant and prejudicial and deprived him of a fair trial. At

the end of the detective's testimony, the prosecutor asked the detective:

> Commonwealth's Attorney: Are you confident after your lengthy investigation that the right individual was arrested for this crime?
>
> Det. Keeling: Absolutely.

Appellant's objection to the question was overruled. The prosecutor asked no further questions.

Appellant argues that this testimony was not relevant, did not serve as rebuttal of the questioning on cross-examination, and amounted to an expression of opinion that appellant was guilty of the charges -- the ultimate issue for the jury's determination. Appellant concedes that opinion evidence from an expert is allowed even if it embraces the ultimate issue in a case, Stringer v. Commonwealth, 956 S.W.2d 883 (Ky. 1997), but observes that the detective was not testifying as an expert on this matter. Appellant thinks that the jury, however, could have drawn a conclusion mistakenly that the detective, due to his training and experience, may have had specialized knowledge about the guilt or innocence of appellant. For example, in Lamastus v. Commonwealth, 878 S.W.2d 32, 34 (Ky. App. 1994), it was determined that the officer's testimony which repeated the facts as told to him by the victim lent credence to the victim's testimony and prejudiced the jury in the victim's favor.

In Bussey v. Commonwealth, 797 S.W.2d 483 (Ky. 1990), we reversed in a sexual abuse case in which an officer testified that he had concluded that some type of misconduct must have occurred. We decided that the officer's testimony amounted to a declaration that he believed the victim's story, and noted that such evidence had been held to constitute reversible error. We reversed upon a finding that the officer's actions

were not at issue in the case.[4] The disputed testimony in the case at bar was similar in nature to that we disapproved of in <u>Bussey</u> and the cases cited therein. Moreover, statements that directly name or implicate the defendant are considered to convey more prejudice. <u>LaMastus</u>, 878 S.W.2d at 34. We agree with appellant that the detective's testimony amounted to a declaration as to the defendant's guilt or innocence, particularly since it was said to have been obtained after the detective's "lengthy investigation." We further conclude that the detective's thoughts as to whether he arrested the perpetrator were irrelevant to the proceedings and inappropriate.

The Commonwealth agrees that the detective was not testifying as an expert, but argues he was therefore permitted to give his opinion as a lay witness pursuant to KRE 701. However, KRE 701 does not present an open forum for lay witnesses to express any opinion. KRE 701 states that if a witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those which are *both* rationally based on the perceptions of the witness *and* helpful to an understanding of the witness' testimony or the determination of a fact in issue. KRE 701 (a) and (b). The opinion given by the witness, Detective Keeling, was not based on his own perceptions, but based on his assessment of the perceptions of others as told to him. Thus, his opinion was not permissible. In addition, his opinion on the issue of guilt or innocence was not helpful to the jury. As we stated in <u>Stringer</u>, "Presumably, jurors do not need assistance in the form of an expert's opinion that the defendant is guilty or not guilty." 956 S.W.2d at 889-890. Jurors also do not need that form of assistance from lay

---

[4] In <u>Bussey</u>, the testimony of the officer was determined to constitute "investigative hearsay," which we declared was not a recognized exception to the hearsay rule, and instructed that a law enforcement officer could only testify about information furnished in an investigation where it tends to explain the action taken by the officer *and* the taking of that action is an issue in the case. <u>Id.</u> at 486, citing <u>Sanborn v. Commonwealth</u>, 754 S.W.2d 534, 541 (1988).

witnesses.  Therefore, the testimony from the detective does not satisfy the criteria for admissible lay witness opinion under KRE 701.

Nevertheless, having reviewed the whole of the evidence we conclude that this evidence was harmless error under all the circumstances of the case.  We agree that Detective Keeling's testimony served improperly to reinforce Hunter's eyewitness identification, after Hunter declared at trial that he could not be sure who he had seen.  However, there was a second eyewitness to the robbery who testified at trial unequivocally that appellant was the perpetrator.  Thus, the detective's opinion was not vital to the identification of the robber at trial.  In addition to the eyewitness testimony, the jury could also consider the detective's testimony, prior to his opinion evidence, that Hunter had been more certain in his identification of appellant when observing the photo pack and that he identified appellant at that time as the person who robbed him.  We conclude that the opinion testimony of the detective, while irrelevant and unjustified, was harmless under the totality of the evidence in this case.

Next, appellant objected to the wording of the instructions.  Appellant objected because the instructions were not phrased to say that the jury was to find the defendant "not guilty" unless it found the elements of the offense, but rather the individual verdict instructions stated that the jury was to find appellant "guilty under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following...."  Appellant argues that the form of the instructions did not make clear that the burden of proof was with the Commonwealth or that the defendant was presumed innocent.  The Commonwealth responds that this allegation of error was not properly preserved for review by specific objection.  Although appellant challenged the language of the instructions, he did not make the additional arguments below regarding the burden of

-10-

proof and presumption of innocence.

Appellant asserts that the defense's proposed language was proper because it followed that used in 1 Cooper, Kentucky Instructions to Juries (Criminal), §§ 2.01A and 2.01D, pp. 67-68 (4th ed. 1999). However, that treatise recommends that the instructions contain an "introductory instruction," setting forth the offense or offenses under each count of the indictment. Cooper explains that such an introductory instruction "serves two purposes: (1) to properly allocate the burden of proof at the outset of the instructions; and (2) to give the jury advance notice of the options with which they will be presented by the substantive instructions." The instructions in the case at bar contained just such an introductory instruction. In addition, the jury was instructed on the burden of proof and told that they should find the defendant not guilty unless satisfied from the evidence alone and beyond a reasonable doubt that he was guilty. Thus, we cannot agree that the instructions were lacking.

Appellant complains on appeal because the individual verdict forms were not phrased in the same way as this introductory instruction, and argues that the variance in language was confusing to the jury. However, jury instructions are to be read as a whole. Bills v. Commonwealth, 851 S.W.2d 466 (Ky. 1993). We believe the jury was certainly capable of understanding the instructions as a whole, without confusion. Therefore, we affirm the instructions to the jury as they were given.

Finally, appellant argues that statements during the prosecutor's closing argument were prejudicial and rendered the trial fundamentally unfair. At issue was the following argument from the prosecutor when referring to appellant:

> One of the things that's most eye opening about this case, to me, is the influence, the terroristic influence that man has over the people who are in this courtroom. You have to ask, "why?" I think it's a reasonable,

> common sense extrapolation to say it's because he can come after me,
> get somebody to come after me.

Appellant concedes that there was no contemporaneous objection to this argument. In order to preserve error as to argument of counsel, there must be an objection at the time of the argument. Sizemore v. Commonwealth, Ky., 844 S.W.2d 397 (1992) overruled on other grounds, McGinnis v. Commonwealth, Ky., 875 S.W.2d 518 (1994). This Court has determined that we will reverse for prosecutorial misconduct in a closing argument only if the misconduct is "flagrant" or if each of the following three conditions is satisfied: (1) proof of defendant's guilt is not overwhelming; (2) defense counsel objected; and (3) the trial court failed to cure the error with a sufficient admonishment to the jury. Barnes v. Commonwealth, 91 S.W.3d 564, 568 (Ky. 2002). Since defense counsel made no objection, appellant must convince this Court that any error was "flagrant" to merit reversal.

Appellant argues that the prosecutor's statement was an unfounded attack on his character, and an attempt to sway the jury not by the evidence but by consideration of an inaccurate characterization. We do not find that there was any flagrant impropriety in the argument since the depiction of appellant as having held a "terroristic influence" over the witnesses at trial was based in the evidence at trial. In argument, counsel may draw reasonable inferences from the evidence and set forth reasons why the evidence supports their theory of the case. Wheeler v. Commonwealth, 121 S.W.3d 173, 180-181 (Ky. 2003). Reversal on the basis of the argument of counsel is only justified when the alleged prosecutorial misconduct is so serious as to render the trial fundamentally unfair. Id. at 189, citing Summitt v. Bordenkircher, 608 F.2d 247 (6th Cir.1979).

When the victim in the case, Everett Hunter, made a less positive identification on the witness stand than he had for police, the Commonwealth questioned him as to whether he feared testifying. While he asserted that he was not fearful, Hunter expressed displeasure that his address was made public by his court appearances. In addition, Arthur Coleman was expected to testify for the Commonwealth, but on the witness stand he refused to answer questions about the robbery and would only say that he was very uncomfortable about testifying. A third witness, who saw the robbery but not the faces of the perpetrators, stated that she was frightened after having seen the robbery and had moved out of the project. We regard the argument of counsel as being a comment on the evidence and not an unfounded attack on appellant's character. Considering the questions raised at trial as to whether the victim was backing off of his identification and whether he and others were fearful of retaliation, the prosecutor's characterization of appellant as having a "terroristic influence" over the witnesses was based on the evidence and did not render the trial fundamentally unfair.

For the foregoing reasons, we affirm appellant's conviction in the Jefferson Circuit Court.

Lambert, C.J.; Cunningham, McAnulty, Minton, Schroder, and Scott, J.J., concur. Noble, J., dissents without opinion.

COUNSEL FOR APPELLANT:

Daniel T. Goyette
Louisville Metro Public Defender
200 Civic Plaza
719 W. Jefferson Street
Louisville, Kentucky 40202

Bruce P. Hackett
Deputy Appellant Defender
200 Civic Plaza
719 W. Jefferson Street
Louisville, Kentucky 40202

COUNSEL FOR APPELLEE:

Gregory D. Stumbo
Attorney General of Kentucky
Room 118, Capitol Building
Frankfort, Kentucky 40601

Matthew Robert Krygiel
Assistant Attorney General
1024 Capital Center Drive
Frankfort, Kentucky 40601